McCune, Appellant, vs. Industrial Commission and another, Respondents.

*December 6, 1951—January 8, 1952.*

The cause was submitted for the appellant on the brief of *N. Paley Phillips* of Milwaukee, and for the respondent Industrial Commission on the brief of the *Attorney General* and *Mortimer Levitan,* assistant attorney general.

CURRIE, J.    The appellant employee does not question the determination of the permanent partial disability at five per cent of permanent total disability, but contends that he is

entitled to $305.35 more temporary total disability compensation than was awarded to him by the order of the examiner affirmed by the commission. He bases this contention upon the fact that the insurance carrier paid him prior to the hearing workmen's compensation from October 7, 1948, through April 30, 1949, while the order by only awarding temporary total disability to February 14, 1949, in effect required that $305.35 previously received by the employee in workmen's compensation benefits be applied as a credit against the allowance granted for permanent partial disability.

The employee advances the following two points to sustain his position on this appeal: (1) That there was an admission by the insurance carrier that temporary total disability was due from the date of the accident through April 30, 1949; and (2) that there is no evidence in the record to sustain the finding that temporary total disability ended February 14, 1949.

Under date of May 11, 1949, the insurance carrier wrote to the commission as follows:

". . . Mr. McCune has been paid compensation through April 30, 1949. He is presently claiming disability which we do not feel is substantiated and we ask that the commission set this case for hearing for the purpose of making a determination as to disability."

It is urged that both this letter and the act of the insurance carrier in paying compensation through April 30, 1949, constituted an admission on the part of the insurance carrier that temporary total disability was due the employee from October 7, 1948, through April 30, 1949.

It is significant that in its letter of May 11, 1949, the insurance carrier does not state that it has paid *temporary total disability* through April 30, 1949, but only that it has paid *"compensation"* through such date. The commission has long followed the practice of informing self-insured employers, and the insurance carriers of other employers, that

workmen's compensation should be paid to an employee who is disabled as a result of an injury occurring in the course of his employment, and that proper credit will be given for any overpayment. The objective underlying this practice of the commission is to encourage payment of compensation to the injured employee as expeditiously as possible.

Sound public policy would seem to require the upholding of the commission's announced position in this respect so that self-insured employers and insurance carriers will not be restrained from making payments of workmen's compensation by the fear that if they do overpay, or pay in a case where there is no liability, the act of payment will be deemed to constitute an admission to the prejudice of the payor. In the instant case we hold that neither the letter nor the payment constituted an admission that the employee was entitled to temporary total disability through April 30, 1949.

We now turn to the employee's second contention, that there is no testimony in the record to sustain the finding of the commission's examiner that the temporary total disability ended February 14, 1949.

Dr. James R. Regan, a specialist in orthopedic surgery, examined the employee on October 30, 1948, and submitted a written report of his examination to the insurance carrier. In this report Dr. Regan considered the possibility of a protruded disc and recommended hospitalization. He saw the employee during the period of hospitalization, and again saw the employee at his office on December 20, 1948, and at that time the employee bore his weight well, stood in an erect position, and was able to bend forward within one inch of the floor. Dr. Regan concluded that the employee had then sufficiently improved so that he could return to work in about a week and be able to work continuously. On January 21, 1949, the employee returned to Dr. Regan's office at which time he had developed a gait which the doctor referred to as "this peculiar gait." Dr. Regan again saw the employee

on February 14, 1949, and found "a peculiar gait not unlike that found on previous examination," and the doctor's examination on February 14, 1949, was extremely unsatisfactory because the employee would not or could not co-operate. The doctor recommended a neurological study.

At the hearing on July 21, 1949, Dr. Regan testified that while he considered the employee to be then temporarily totally disabled he did not know whether it was "on a functional or organic basis," and that he did not then know whether the disability was due to the injury.

Dr. John L. Garvey, a specialist in neurology, examined the employee on May 3, 1949, and came to no conclusion as to whether the employee then had any disability resulting from his injury. Dr. Garvey testified:

"I would like to explain that by saying taking into consideration his subjective and objective findings that I am unable to conclude that he has any organic diseases present, that the symptomology. there is functional; performance is of a very bizarre type and I cannot conceive of any injury that would produce the type described, that would produce this type of picture."

Dr. Harry B. Sadoff, a specialist in orthopedic surgery, testified as an expert medical witness for the employee. Dr. Sadoff examined the employee on February 18th and May 20th, .1949, and submitted a written report of his findings to counsel for the employee dated May 23, 1949. In this report Dr. Sadoff stated it to be his conclusion that the employee was "totally disabled from any gainful employment," and that the employee "presented rather strong positive symptoms and findings which are due to an apparent slipped intervertebral disc." He recommended that the employee be readmitted to the hospital and undergo a myelogram test to substantiate the diagnosis of a slipped disc.

Apparently because of the conflict in the medical testimony, the commission had the employee submit to an independent

medical examination by Dr. Albert C. Schmidt, a specialist selected by the commission. Dr. Schmidt submitted a written report of his examination of the employee made August 11, 1949, to the commission, and his conclusion was as follows:

"Most of this patient's complaints are voluntarily assumed. There is no evidence of a protruded disc. No further treatment is necessary.

"On the basis of exaggeration of a pre-existing condition, to settle the case, I would suggest that this man be paid an indemnity in the amount of three per cent to five per cent, considering the man as a working unit."

The foregoing is a summary of all the medical testimony in the record bearing on the question of employee's disability, both temporary and permanent. No medical witness fixed February 14, 1949, as the end of the healing period when the employee would have been able to return to work. The burden of proving the period of temporary total disability is upon the employee and if there is any credible evidence to support the findings of the commission they cannot be disturbed. *Milwaukee E. R. & L. Co. v. Industrial Comm.* (1936), 222 Wis. 111, 114, 267 N. W. 62.

On the basis of the independent examination and report of Dr. Schmidt, the commission found the permanent partial disability to be only five per cent which we interpret as negativing the existence of a slipped or protruded disc. This leaves, as the only medical testimony on the question of when the temporary total disability ended, Dr. Regan's statement that as of December 20, 1948, the employee would be able to return to continuous work in about a week thereafter. This testimony would have supported a finding that the employee was able to return to work on December 27, 1948, and therefore the employee was not prejudiced by the finding that the temporary total disability ended February 14, 1949, inasmuch as the burden of proof on such issue is on the employee.

*By the Court.*—Judgment affirmed.