EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, a Wisconsin Insurance Corporation, Wausau Underwriters Insurance Company, a Wisconsin Insurance Corporation, Worldwide Underwriters Insurance Company, a Wisconsin Insurance Corporation, Plaintiffs-Respondents-Cross Appellants,

v.

Charles SMITH, Treasurer of the State of Wisconsin, Defendant-Appellant-Cross Respondent.

Supreme Court

*No. 88-2102. Argued October 4, 1989.—Decided April 6, 1990.*

(Also reported in 453 N.W.2d 856.)

For the defendant-appellant-cross respondent, there were briefs (in court of appeals) by *Curtis D. Forslund, Jeffrey D. Fick* and *Gray, Plant, Mooty, Mooty, and Bennett,* Minneapolis, Minnesota; *David J. Epstein,* Boston, Massachusetts; *Richard A. Victor,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general, and oral argument by *Mr. Victor, Mr. Forslund,* and *Mr. Epstein.*

For the plaintiff-respondent-cross appellant, there were briefs (in court of appeals) by *Timothy J. Muldowney* and *LaFollette & Sinykin,* Madison, and oral argument by *Mr. Muldowney.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal and cross-appeal from a judgment of the circuit court for Dane County, Susan Steingass, Circuit Judge. The circuit court issued a declaratory judgment determining the rights of Employers Insurance of Wausau and the State Treasurer under the Wisconsin Unclaimed Property Acts[1] as they relate to uncashed worker's com-

---

[1] Wisconsin Unclaimed Property Acts refers to the Wisconsin versions of the Uniform Disposition of Unclaimed Property Act

pensation benefit checks issued by Employers Insurance during the years 1964 through 1975 to injured workers in worker's compensation cases that were not contested.[2]

The circuit court declared (1) that these uncashed checks are not intangible property subject to the Wisconsin Unclaimed Property Acts; (2) that section 177.02(1), Stats. 1987–88, establishing a five-year period for the presumption of abandonment, does not apply to uncashed checks issued prior to December 31, 1984; and

---

of 1966 and the Uniform Unclaimed Property Act of 1981. See pp. 205–206 *infra*.

In 1983, the Treasurer started enforcement actions against several insurance companies under the Wisconsin Unclaimed Property Acts. For reasons that are not clear, these actions remained dormant for a number of years.

Concerned about the new penalties imposed by Wisconsin's adoption in 1983 of the Uniform Unclaimed Property Act of 1981, Employers Insurance and several other insurers filed a complaint for declaratory and injunctive relief on May 15, 1986. This declaratory judgment action and the Treasurer's 1983 enforcement actions were disposed of as part of a stipulation and settlement approved by the circuit court except for the issues that are the subject of this appeal.

[2]In each instance involved in this appeal Employers Insurance issued a check or draft to an injured worker in an uncontested case.

We use phrases such as "worker's compensation cases that were not contested" and "uncontested cases" to refer to cases in which (1) the Worker's Compensation Division has not made a final award following a contested hearing or approved a compromise agreement and (2) Employers Insurance has neither admitted its liability under the Worker's Compensation Law nor taken any steps to deny or dispute its liability.

Uncashed checks or drafts issued in contested cases, that is, in cases in which a final award was made following a contested hearing or ·a compromise agreement was approved, are not at issue in this appeal.

(3) that the statute of limitations does not bar the Treasurer's cause of action because the statute had been tolled.

The defendant, Charles Smith, Treasurer of the State of Wisconsin[3] appealed from that part of the judgment declaring that the Acts do not apply to uncashed worker's compensation benefit checks in uncontested cases and that the five-year period for the presumption of abandonment (sec. 177.02(1), Stats. 1987–88) applies prospectively only. Employers Insurance cross-appealed from that part of the judgment declaring that the statute of limitations does not bar the Treasurer's cause of action. We granted Employers Insurance's petition to bypass the court of appeals. Sections 808.05 and 809.60(1), Stats. 1987–88.

We reverse that part of the circuit court's judgment declaring that the Acts do not apply to uncashed worker's compensation benefit checks in uncontested cases. We hold that the obligations represented by the uncashed worker's compensation benefit checks in uncontested cases are intangible property subject to the reporting and delivery requirements of the Wisconsin Unclaimed Property Acts.

We reverse that part of the circuit court's judgment declaring that section 177.02(1), Stats. 1987–88, applies prospectively only. We hold that the applicable period of abandonment for uncashed worker's compensation benefit checks issued prior to December 31, 1984, is five years under sections 177.02(1) and 177.37(2), Stats. 1987–88.

---

[3] At all times material to this action, the Treasurer has been charged with the direction and supervision of the Office of the State Treasurer pursuant to ch. 14, Stats. 1987–88, and with the administration of the Wisconsin Unclaimed Property Acts, ch. 177, Stats. 1981–82, 1987–88.

We affirm that part of the judgment declaring that the statute of limitations does not bar the Treasurer's cause of action. We hold that the Treasurer's cause of action did not accrue for purposes of the statute of limitations because Employers Insurance failed to report the uncashed checks under the Wisconsin Uniform Disposition of Unclaimed Property Act, ch. 177, Stats. 1981–82.

This appeal involves the relationship between the Wisconsin Unclaimed Property Acts and the Wisconsin Worker's Compensation Law. As the circuit court observed, the statutes and their interrelationship are complex.

In 1970 Wisconsin adopted, with some modifications, the Uniform Disposition of Unclaimed Property Act of 1966 promulgated by the National Conference of Commissioners on Uniform Laws as chapter 177 of the Wisconsin Statutes. We refer to this Act as the old Act and to sections in the old Act, as subsequently amended by the legislature, in the 1981–82 Statutes. In 1983 the Wisconsin legislature repealed and recreated chapter 177, Stats. 1981–82, adopting, with some modifications, the Uniform Unclaimed Property Act of 1981 promulgated by the National Conference of Commissioners on Uniform Laws. We refer to this Act as the new Act and to sections in the new Act in the 1987–88 Statutes. The two Uniform Acts are similar. Consequently the provisions of the old Act and the new Act are similar.

■

Both Uniform Acts are "modern" escheat statutes. While a traditional escheat statute transfers the ownership of abandoned property to the state, the Uniform Acts simply transfer custody, but not ownership, of the abandoned property to the state. The owner's interest in the property is protected because the state never claims

title to the property.[4] Under the Acts, the state remains the perpetual custodian for the owner.[5] The major purpose of the Acts is two-fold: (1) to protect the owner by giving the owner the opportunity to recover the property from the custodian of the property, the state, at any time; and (2) to give the state rather than the holder of the unclaimed property the benefit of the use of the property until the owner claims it.[6]

[4]In Wisconsin, unclaimed property is deposited in the school fund until the owner claims it. Section 177.23, Stats. 1987–88.

[5]Prefatory Note, Uniform Disposition of Unclaimed Property Act (1966), in 8A Uniform Laws Annotated 135, 136–37 (1983); Prefatory Note, Revised Uniform Disposition of Unclaimed Property Act, Handbook of the National Conference of Commissioners on Uniform State Laws 279 (1966).

[6]The National Conference of Commissioners on Uniform State Laws concluded that the Act "will serve to protect the interests of owners, to relieve the holders from annoyance, expense and liability, to preclude multiple liability, and to give the adopting state the use of some considerable sums of money that otherwise would, in effect, become a windfall to the holders thereof." Prefatory Note, Revised Uniform Disposition of Unclaimed Property Act, Handbook of the National Conference of Commissioners on Uniform State Laws 280 (1966). See also Note, *Modern Rationales of Escheat,* 112 U. Pa. L. Rev. 95 (1963); Note, *Origins and Development of Modern Escheat,* 61 Colum. L. Rev. 1319 (1961).

For discussions of the 1981 Uniform Act, see McThenia and Epstein, *Issues of Sovereignty in Escheat and the Uniform Unclaimed Property Act,* 40 Wash. & Lee L. Rev. 1429 (1983); Commentary, *The Uniform Unclaimed Property Act of 1981: Time to Abandon the 1966 Act in Alabama,* 34 Ala. L. Rev. 51 (1983); Note, *Revisions in Abandoned and Unclaimed Property Legislation: A Look at the 1981 Uniform Unclaimed Property Act and West Virginia's Revised Uniform Act,* 85 W. Va. L. Rev. 969 (1983); Note, *Virginia's Acquisition of Unclaimed And Abandoned Personal Property,* 27 Wm. & Mary L. Rev. 409 (1986).

The material facts are not disputed for purposes of this appeal. The legal conclusions to be drawn from these facts are in dispute. This case presents issues of law, and we shall decide the three issues of statutory interpretation in turn.

## I.

The first issue is whether uncashed checks issued by Employers Insurance to pay worker's compensation benefits to injured workers in uncontested cases represent property subject to chapter 177, the Wisconsin Unclaimed Property Acts.

According to the record, checks were uncashed for many reasons. Some were not cashed because the post office failed to deliver them; the name or address of the payee was incorrect. Some payees misplaced or lost the checks. Some believed, albeit mistakenly, that by cashing the checks they would waive rights under the Worker's Compensation Law. Still other payees did not cash checks because their attorneys incorrectly advised them not to do so.

The circumstances surrounding the issuance and delivery of a worker's compensation benefit check in the amount of $202 provides one example of how and why a check remained uncashed. The payee received benefit checks weekly for five months while he was recuperating from an eye injury and unable to work. He believed that he had cashed each of the weekly benefit checks upon

For discussions of earlier acts and proposals, see Shestack, *Disposition of Unclaimed Property—A Proposed Model Act,* 46 Ill. L. Rev. 48 (1951); Note, *Unclaimed Property—A Potential Source of Non-Tax Revenue,* 45 Mo. L. Rev. 493 (1980); Annot., *Uniform Disposition of Unclaimed Property Act,* 98 A.L.R.2d 304 (1964).

receipt. One of the checks that Employers Insurance had issued to him, however, was never cashed. It is unclear whether the payee had not received the check or had received it and mislaid it. It is clear, however, that Employers Insurance did not deny or dispute the payee's worker's compensation claim. Indeed, in spite of its retaining possession of the money the uncashed check represented, Employers Insurance considered that it had satisfied its obligation to pay the injured employee under the Worker's Compensation Law.

The issue presented in this appeal does not turn on the reason a worker's compensation benefit check in an uncontested case goes uncashed. The examples are illustrative only. The determination of whether uncashed worker's compensation benefit checks in uncontested cases are covered under the Wisconsin Unclaimed Property Acts turns on the nature of the obligation represented by the uncashed check. To make this determination we look first to the Wisconsin Unclaimed Property Acts and then the Worker's Compensation Law.

The Wisconsin Unclaimed Property Acts require a holder of property presumed abandoned by an owner to report and turn over the abandoned property to the State Treasurer. The Acts define a "holder" as any person "in possession of property belonging to another" or who is "indebted to another on an obligation."[7] "Owner," under the Acts, is defined in terms of the underlying legal relationship on which the owner's property right is based. "Owner" means "a depositor in the case of a deposit" or "creditor, claimant or payee in the case of other intangible property . . .."[8]

---

[7]Section 177.01(8), Stats. 1987–88. See also section 177.01(4), Stats. 1981–82.

[8]Section 177.01(12), Stats. 1987–88. See also section 177.01(7), Stats. 1981–82.

The Wisconsin Unclaimed Property Acts also define the types of property included within their purview. The new Act states that except as otherwise provided in the statutes, "*all intangible property* . . . that is *held, issued or owing* in the ordinary course of the holder's business and that has remained unclaimed by the owner for more than 5 years after it became payable or distributable is presumed abandoned." Section 177.02(1), Stats. 1987–88 (emphasis added). The new Act also states that "intangible property" includes "*amounts due and payable* under the terms of insurance policies." Section 177.01(10)(e), Stats. 1987–88 (emphasis added).

The old Act stated, "All intangible personal property, not otherwise covered . . . that is *held or owing* in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than 10 years after it became payable or distributable is presumed abandoned." Section 177.09, Stats. 1981–82 (emphasis added).[9]

---

[9]The Comment to sec. 9 of the Uniform Disposition of Unclaimed Property Act of 1966 (the section upon which sec. 177.09, Stats. 1981–82, is modeled) states:

> Section 9 is the omnibus section covering all other intangible personal property not otherwise covered by the more specific provisions of the Act. It should be noted that to be subject to the section the property must be held or owing in the "ordinary course of the holder's business in this state." A wide variety of items will be embraced under this section, including, by way of illustration, money, stocks, bonds, certificates of membership in corporations, securities, bills of exchange, deposits, interest, dividends, income, amounts due and payable under the terms of insurance policies not covered by section 4, pension trust agreements, profit-sharing plans, credit balances on paid wages, security deposits, refunds, funds deposited to redeem stocks, bonds, coupons and other securities, or to make a distribution thereof, together with any interest or increment thereon. If desired, these specific items could readily be written into section 9 itself, thus perhaps adding to clarity and ready under-

The Treasurer maintains that the language of chapters 102 and 177 "fit like hand and glove." Section 102.43 and 102.44 delineate the benefit level and a schedule by which benefits must be paid to the worker. Section 102.43 provides that benefits are "*due* . . . and shall be *payable* weekly . . .." The Treasurer contends the issuance of the worker's compensation benefit checks that are due and payable under the worker's compensation law are due and payable under the new and old Acts.

The Treasurer also points to the Standard Workers' Compensation and Employers' Liability Insurance Policy to support his contention that the Worker's Compensation Law and the Acts complement each other. The insurance policy issued by Employers Insurance in the present case provides that the insurer will "pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law." The policy also states that Employer's Insurance "shall be directly and primarily liable to any person entitled to the benefits of the workmen's compensation law under this policy." From the language of the Acts and the policy, the Treasurer concludes that issuance of the checks is sufficient to make the uncashed checks due and payable under the Acts.

Employers Insurance maintains that issuance of workers compensation checks is not evidence of liability. Checks for benefits are issued pursuant to the statutory policy of prompt payment under the Worker's Compensation Law. Employers Insurance argues that the tender of a check for payment of Worker's Compensation bene-

standing of the coverage of the section, although necessarily at the expense of brevity.

8A Uniform Laws Annotated sec. 9 (1983) at 173.

fits establishes at most that its claim personnel believed benefits were due at the time of issuance of the check. After the check is issued circumstances may change or an error may be detected. Absent an award or compromise agreement, Employers Insurance contends that its liability for workers compensation is never fixed, certain or liquidated for the purposes of the Wisconsin Unclaimed Property Acts. The Worker's Compensation Law permits the insurer to dispute or deny a claim even after a check is cashed.

The circuit court agreed with Employers Insurance and interpreted the statutory phrases "amount due and payable" and "held and owing" to mean a liquidated claim and defined a liquidated claim as one in which the payor's (holder's) liability is beyond dispute. Because the Worker's Compensation Law permits Employers Insurance to dispute or deny any aspect of its liability in an uncontested case even after a check is cashed, the circuit court concluded that the obligations represented by the uncashed checks in uncontested cases did not have the requisite degree of certainty the Acts required.[10] The

---

[10]The circuit court searched the record for evidence of a "liquidating event," an event establishing Employers Insurance's liability for any of these claims with absolute finality such as an award or an approved settlement might. The circuit court reasoned that a liquidating event was necessary to convert the uncashed check into a "liquidated obligation," that is an obligation that was beyond dispute. The circuit court found no such liquidating event in the evidence. Accordingly the circuit court concluded that Employers Insurance's payment by check must be presumed to be merely compliance with the prompt payment requirement under the Worker's Compensation Law and thus simply an "advance" that had not been transformed into the kind of fixed and certain obligation the circuit court viewed as required under chapter 177.

According to the record, the overwhelming majority of

circuit court concluded that Employers Insurance's right to dispute or deny its liability—not the exercise of that right—precluded the conclusion that the obligation was reportable under the Wisconsin Unclaimed Property Acts.

Courts in other states applying the Uniform Acts have used such words as "fixed," "certain," "liquidated," "unconditional," and "not contingent" to interpret the words "amount due and payable" and "held and owing."[11] The statutory words connote that the holder has a duty to make payment to the owner and that there is a degree of certainty inherent in the holder's obligation to the owner. The circuit court properly looked to the relationships among the property and its holder and

---

worker's compensation benefit payments (over 90 percent) are tendered and accepted by claimants without the Worker's Compensation Division determining liability. Most disputes regarding compensation benefits are initiated by employees, rather than employers or insurers. About 8 percent of all reported injuries in Wisconsin result in disputes filed with the Division.

Because of this record, the circuit court characterized its decision as "hard to swallow" and conceded that its decision that the money represented by these uncashed checks belonged to Employers Insurance contravened its conclusion "on a common sense level." The circuit court acknowledged that Employers Insurance not only did not deny or dispute the claims for which checks had been issued, but also would not have done so because either it had no grounds for dispute or it would incur more expense to litigate the claims than to pay them.

[11]*See, e.g., Revenue Cabinet v. Blue Cross and Blue Shield of Kentucky*, 702 S.W.2d 433, 434–35 (Ky. 1986) ("certain and liquidated"); *Blue Cross of Northern California v. Cory*, 120 Cal. App. 3d 723, 174 Cal. Rptr. 901, 907 (Cal. App. 1981) ("mandatory and unconditional"); *Insurance Co. of North America v. Knight*, 8 Ill. App. 3d 871, 291 N.E.2d 40, 43 (1972) ("binding obligation," "certain and fixed obligation").

the owner to interpret the statutory words "amount due and payable" and "held and owing."

The question is whether the circuit court erred in basing its decision that the obligations represented by the uncashed worker's compensation benefit checks were not due and payable solely on the ground that Employers Insurance retains the right to dispute its liability or the amount of its obligation in an uncontested case under the Worker's Compensation Law even after issuance and negotiation of a check. In other words, is the obligation represented by an uncashed check in an uncontested case liquidated only when the insurer loses its right to deny or dispute its liability?

The focus of our inquiry must be on the nature of the duty of Employers Insurance under the Worker's Compensation Law to the payee (injured worker claimant) and the degree of certainty inherent in Employers Insurance's financial obligation represented by uncashed worker's compensation benefit checks in uncontested cases under the Worker's Compensation Law.

Employers Insurance has a duty under the Worker's Compensation Law to pay an employee who sustains an injury while performing service growing out of and incidental to employment according to statutorily scheduled benefits. When an employee is injured and claims compensation, the insurer may dispute its liability or pay benefits provided by statute.

If the insurer denies or disputes its liability the statutes and regulations establish a procedure for doing so.[12] Most of the time, the insurer pays benefits without controversy, as Employers Insurance chose to do in issuing the checks involved in this case.

---

[12]Sections 102.16, 102.17, Stats. 1987–88; section Ind. 80.02(2)(d), Wis. Adm. Code.

The statutes and regulations are designed to promote automatic and prompt payment of benefits by the insurer. Promptness of payment is a licensing standard and a competitive measure for insurers.

Worker's compensation benefits are due commencing from the fourth calendar day after the employee leaves work as a result of the injury.[13] The first benefit payment should be tendered on or before the fourteenth day following the employee's leaving work because of injury. An insurer may be subject to a 10 percent penalty for "inexcusable delay" in making payments.[14]

Once the insurer begins making payments, it must report to the Department of Industry, Labor and Human Relations within 7 days from the date payments are stopped for any reason. Section Ind. 80.02(2)(b), Wis. Adm. Code. The insurer shall notify the Department and employee immediately if liability for payment of compensation is denied. Section Ind. 80.02(2)(d), Wis. Adm. Code. If the Department is notified without any explanation that an insurer suspends payment of worker's compensation benefits, the Department will require the insurer either to resume payments or to notify the

---

[13]Section 102.43, Stats. 1987–88; Section Ind. 80.02(2)(a), Wis. Admin. Code; *Milwaukee County v. ILHR Department,* 48 Wis. 2d 392, 397-98, 180 N.W.2d 513 (1970).

According to the record, if the initial payment of compensation benefits is not made within 30 days from the date of injury, the Worker's Compensation Division, which monitors the injured worker's claim, sends the insurer a form requesting the insurer to explain the reason for the delay in payment.

[14]Section 102.22(1), Stats. 1987–88. See *Milwaukee County v. ILHR Department,* 48 Wis. 2d 392, 397, 180 N.W.2d 513 (1970); *Coleman v. American Universal Ins. Co.,* 86 Wis. 2d 615, 625-26, 273 N.W.2d 220 (1979).

Department and the employee the reason payments were stopped.

Employers Insurance tendered the uncashed checks at issue in compliance with the Worker's Compensation Law. Employers Insurance reported to the Division issued checks (even though uncashed) as benefits paid to the worker. According to the record, the Worker's Compensation Division considers the insurer's issuance of the check to the worker as tender of payment for purposes of imposing penalties for inexcusable delay under sec. 102.22; the Division apparently does not require insurers to report uncashed benefit checks to it.

■■■

Employers Insurance is correct when it asserts that payment of benefits and reports to the Department are not an admission of liability. Even after payment, the insurer has the right to deny or dispute any aspect of its liability in an uncontested case. *McCune v. Industrial Comm.*, 260 Wis. 499, 501–02, 50 N.W.2d 683 (1952); *Scholz v. Industrial Comm.*, 267 Wis. 31, 40, 64 N.W.2d 204 (1954). The payee does not forfeit or waive any rights by accepting the worker's compensation benefit payment.

We are unconvinced by Employers Insurance's argument, however, that the possibility of its disputing or denying its liability for compensation benefits "attaches" to each uncashed check. As the Treasurer asked rhetorically, "Why is it that the person who cashed the check is entitled to get the money but the person who loses the check can no longer have the money." R 154:R5.

The check is simply the means Employers Insurance chose to satisfy its statutory obligation to pay worker's compensation benefits promptly. Employers Insurance's obligation represented by the uncashed

check is to pay a fixed, certain and liquidated amount that Employers Insurance believed it owed at that time to the injured employee under the Worker's Compensation Law. The possibility that Employers Insurance may at some future time deny or dispute its liability does not change the status of the obligation represented by the uncashed check.[15] When Employers Insurance issues the check and does not dispute or deny liability, the payee is unqualifiedly entitled to the check and the cash it represents.

Indeed Employers Insurance's obligation to pay worker's compensation benefits and its right to dispute or deny liability are the same whether or not a check in an uncontested case is negotiated. Employers Insurance issued the checks without conditions. Had the payees received and negotiated the checks, the payees would have had full legal title to the cash. After the check is negotiated, Employers Insurance may decide to deny or dispute its liability. Employers Insurance would have no

---

[15]The court in *McCune v. Industrial Comm.*, 260 Wis. 499, 50 N.W.2d 683 (1954), indicated that if an insurer contests a claim, the insurer may offset any overpayment it made to the worker against future payments to the worker.

According to the record, the Worker's Compensation Division suggests to the employee repayment of overpayment benefits but does not order repayment. In this case, neither party was able to cite any Wisconsin authority that clearly determines the rights of an insurer to recover overpayments from an injured worker in the absence of an offset. We do not decide that issue because it is not necessary to a decision in this case. The Treasurer's brief asserts that the majority of courts addressing the issue have concluded that in the absence of explicit legislative provisions allowing recovery of overpayments in the absence of an offset, insurers may not attempt to force a worker to pay back erroneously paid worker's compensation benefits.

lien or encumbrance on any property of the payees of the checks.

Employers Insurance has not denied or disputed its liability in any of the claims for which checks were issued in this case. Thus the payee of the uncashed check, like the payee of the negotiated check, is unqualifiedly entitled to the money the check represents. Accordingly we conclude that uncashed checks in uncontested cases represent amounts due and payable by Employers Insurance under the Worker's Compensation Law that must be reported and delivered to the Treasurer pursuant to ch. 177.[16]

Holding that uncashed worker's compensation benefit checks in uncontested cases represent amounts due and payable under the Wisconsin Unclaimed Property Acts comports with the legislative policy underlying the

---

[16]Other cases that have held uncashed insurance benefit checks are subject to unclaimed property laws include: *Revenue Cabinet v. Blue Cross & Blue Shield of Kentucky, Inc.,* 702 S.W.2d 433 (1986); *Treas. and Rec. Gen. v. John Hancock Mut. Life Ins. Co.,* 446 N.E.2d 1376 (Mass. 1983); *Atty. Gen. v. Blue Cross & Blue Shield,* 168 Mich. App. 372, 424 N.W.2d 54 (1988); *Louisiana Hospital Service Inc. v. Collector of Rev.,* 293 So. 2d 663 (La. App. 1974).

Cases that have held that uncashed insurance benefit checks are not certain and fixed obligations subject to the unclaimed property law do so generally because some or all of the checks at issue were issued as offers of settlement that were not accepted, rather than as payment of fixed benefits mandated by the terms of the insurance policy. See, *e.g., Kane v. Ins. Co. of North America,* 38 Pa. Commw. 42, 392 A.2d 325 (1978); *Allstate Ins. Co. v. Eagerton,* 403 So. 2d 172 (Ala. 1981); *Aetna Cas. and Sur. Ins. Co. v. State ex rel. Eagerton,* 414 So. 2d 455 (Ala. 1982). See Comment, sec. 2, Uniform Unclaimed Property Act of 1981, 8A Uniform Laws Annotated 631 (1983).

Worker's Compensation Law, namely to provide prompt payment to injured workers. Under chapter 177 the Treasurer attempts to locate the payee and turns over the unclaimed funds to the payee. Although the payee's receipt of the uncashed check from the Treasurer is no longer prompt payment, chapter 177 enables the worker, the person who is entitled to the worker's compensation benefit payments, to receive them.

Our analysis of the obligation represented by the uncashed checks is also consistent with other courts' application of unclaimed property statutes to situations where payment of a claim does not preclude the holder's right to litigate liability on the claim. The New York Court of Appeals and the United States Supreme Court recognized many years ago that a life insurance company holding funds payable under a life insurance contract came within the abandoned property law, even though the insurer may, after the death of the insured, contest its liability. See *Connecticut Mutual Life Ins. Co. v. Moore*, 297 N.Y. 1, 74 N.E.2d 24 (1947); aff'd 333 U.S. 541 (1948). See also *Connecticut Mutual Life Ins. Co. v. Moore*, 187 Misc. 1004, 65 N.Y.S.2d 143, 158–159 (1946), *aff'd* 69 N.Y.S.2d 323 (1947).

The *Connecticut Mutual* case involved the state's right, under the New York Abandoned Property Law, to the proceeds of a life insurance policy payable on death when an insured died and no claim for the proceeds of the policy had been made for 7 years. The New York law eliminated the need to file a claim but preserved the insurance company's policy defenses, such as the insured's understating his or her age, or the insured's ill health at the issuance of the policy, or the insured's death as a result of suicide, military service, or an aviation accident. Asserting that the statute is an unconstitutional impairment of the obligation of contracts, Con-

necticut Mutual contended that escheat of the policy benefits to the state pursuant to the statute would eliminate its rights to dispute the claims and would transform an obligation that was only conditional and unliquidated into a fixed, liquidated obligation.

The Court concluded that Connecticut Mutual's rights to dispute the claim did not affect the fact that the state, not the company, should hold the property for the claimant. The Connecticut Mutual's proper remedy regarding any policy to which it claims a whole or partial defense was, wrote the Court, to refuse to turn over the amount due on such policy. The Court summarized its conclusion as follows:

> [u]nless the state is allowed to take possession of sums in the hands of the companies . . . as abandoned, the insurance companies would retain moneys contracted to be paid on condition and which normally they would have been required to pay. We think that the classification of abandoned property established by the statute describes property that may fairly be said to be abandoned property and subject to the care and custody of the state and ultimately to escheat. The fact that claimants against the companies would under the policies be required to comply with certain policy conditions does not affect our conclusion. The state may more properly be custodian and beneficiary of abandoned property than any person. *Connecticut Mutual Life Ins. Co. v. Moore,* 333 U.S. 541, 546 (1948).

Similarly, we conclude that the possibility that Employers Insurance may deny or dispute its liability on the claim is not determinative of the central question under chapter 177. Our holding recognizes that Employers Insurance issued the uncashed instruments to pay

statutory benefits in uncontested cases pursuant to its duty of prompt payment under the Worker's Compensation Law. We conclude that Employers Insurance's statutory obligation represented by an uncashed check in an uncontested case possesses the requisite degree of certainty to come within the Acts' definitions of intangible property. If Employers Insurance decides to deny or dispute its liability under the Worker's Compensation Law, chapter 177 in no way precludes it from taking the necessary steps to do so.

## II.

The second issue the Treasurer raises involves the applicable period of abandonment for uncashed checks issued prior to December 31, 1984 (that is, prior to the effective date of the new Act). Under section 177.09, Stats. 1981–82 (the old Act), intangible property that has remained unclaimed for more than 10 years is presumed abandoned.[17] Under section 177.02(1), Stats. 1987–88 (the new Act), intangible property that has remained unclaimed for more than five years is presumed abandoned.[18]

Section 177.02(1) of the new Act is silent regarding the applicability of the new five-year abandonment

[17]Section 177.09, Stats. 1981–82, provides: "All intangible property . . . that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than 10 years after it became payable or distributable is presumed abandoned."

[18]Section 177.02(1), Stats. 1987–88, provides: "Except as otherwise provided in this chapter, all intangible property . . . that is held or owing in the ordinary course of a holder's business and that has remained unclaimed by the owner for more than 5 years after it became payable or distributable is presumed abandoned."

period to property subject to the old Act but not required to be reported under the old Act because the old Act's ten-year period of abandonment has not expired.

In circuit court, Employers Insurance contended and the circuit court held that the ten-year abandonment period of the old Act applied to uncashed checks written before the effective date of the new Act.[19]

The difference between the applicable periods of abandonment specified in the old and new Acts for uncashed checks issued before December 31, 1984, is significant. If, as the circuit court held, the new Act's five-year period of abandonment does not apply to uncashed checks issued prior to December 31, 1984, then checks issued prior to December 31, 1979, need not be reported in the initial report under the new Act and would be reported later as the ten-year period elapsed. If, as the Treasurer contends, the new Act's five-year period of abandonment applies to uncashed checks issued prior to December 31, 1979, the obligations represented by these checks would be presumed abandoned as of December 31, 1984, and would have to be reported in the initial report under the new Act. The effect of adopting the Treasurer's position is to speed up the reporting of property presumed abandoned; the initial report would include an additional five years' worth of property if the new Act's five-year period of abandonment is applicable.

---

[19]The circuit court held that the ten-year abandonment period under the old Act, section 177.09, Stats. 1981–82, not the five-year abandonment period under the new Act, applies to property covered by the old Act. The circuit court stated:

> The reading of the language of the new statute is uninformative. It does not expressly shorten the abandonment [dormancy] period retroactively for property covered under the old Act. In the face of that silence I am constrained to agree that the old act's provisions regarding abandonment apply to property covered by the old Act.

The Treasurer maintains that although section 177.02(1) of the new Act is silent regarding retroactivity, section 177.37(2), Stats. 1987–88, expressly makes the new Act's five-year period of abandonment applicable to uncashed worker's compensation benefit checks issued before December 31, 1984. In describing the initial report to be filed under the new Act, section 177.37(2), Stats. 1987–88, provides as follows:

> **(2)** The initial report filed under this chapter for property that was not required to be reported before December 31, 1984, but which is subject to this chapter [the new Act] shall include all items of property that would have been presumed abandoned during the 10 year period preceding December 31, 1984 as if this chapter had been in effect during that period.

The Treasurer contends that section 177.37(2) is unambiguous. The Treasurer argues that the language of section 177.37(2) is expressly retroactive, that is, that section 177.37(2) expressly reaches back to apply to unclaimed property in the possession of the holder before December 31, 1984, the effective date of the new Act. The Treasurer further argues that section 177.37(2) by its express language brings within the ambit of the new five-year abandonment period unclaimed property that was subject to the old Act but was not reportable as of December 31, 1984, under the old Act's ten-year abandonment period.

Employers Insurance agrees with the Treasurer that section 177.37(2) on its face has a retroactive effect. It argues, however, that section 177.37(2) is ambiguous. Employers Insurance urges that section 177.37(2) can and should be interpreted as applying the five-year abandonment period only to *types* of property not previously covered by the old Act but now covered by the new Act.

Because it characterizes section 177.37(2) as ambiguous, Employers Insurance contends that this court's adoption of the Treasurer's interpretation that section 177.37(2) is fully retroactive would violate the oft-repeated and oft-applied canon of statutory interpretation that "a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application."[20]

Employers Insurance argues that the silence of section 177.02(1) and the ambiguity of section 177.37(2) do not suggest by either "express language or necessary implication" that the legislature intended the shorter abandonment period to apply retroactively to property reportable under the old Act.

The canon of interpretation against retroactive legislation is a maxim based on characteristics of legislation and concepts of justice. The strong common-law tradition is that the legislature's primary function is to declare law to regulate future behavior. As a matter of justice, laws should not be enforced before people can learn of the law and conduct themselves accordingly, and

---

[20]*Swanke v. Oneida County*, 265 Wis. 92, 99, 60 N.W.2d 756, 62 N.W.2d 7 (1953). See also, *e.g., Vanderpool v. LaCrosse & Milwaukee R.R. Co.*, 44 Wis. 652, 663 (1878); *Filipkowski v. Springfield Fire & Marine Ins. Co.*, 206 Wis. 39, 42, 238 N.W. 828 (1931); *Shaurette v. Capitol Erecting Co.*, 23 Wis. 2d 538, 544, 128 N.W.2d 34 (1964).

Another formulation of this canon is that legislation is presumed prospective unless the statutory language clearly reveals by express language or necessary implication an intent that it apply retroactively. *See, e.g., Lanz-Owen & Co. v. Garage Equipment Mfg. Co.*, 151 Wis. 555, 560, 139 N.W. 393 (1913); *State v. ILHR Dept.*, 101 Wis. 2d 396, 403, 304 N.W.2d 758 (1981).

retroactivity disturbs the stability of past transactions. Although the canon against retroactive legislation guides courts in interpreting statutes, it does not guide the legislature in adopting laws. The legislature can pass a statute that has retroactive effect so long as it does not violate the federal or state constitution.[21]

---

[21]See 2 Sutherland, Statutory Construction, secs. 41.02–41.04 (4th ed. 1986 rev.); Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 693–95 (1960); Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence,* 20 Minn. L. Rev. 775 (1936).

We have recognized that the canon of interpretation that the legislature must state its intention of retroactive application by express language or necessary implication has exceptions.

Courts have said that the doctrine of prospective interpretation does not apply to remedial statutes. *State ex rel. Davis & Starr Lumber Co. v. Pors,* 107 Wis. 420, 427–28, 83 N.W. 706 (1900).

In *Town of Bell v. Bayfield County,* 206 Wis. 297, 301, 293 N.W. 503 (1931), the court concluded that even when an amending enactment is silent about its retroactive effect, the statute should be construed in the light of the situation which it obviously was passed to remedy. In other cases in which the court has encountered a statute silent or ambiguous about retroactivity it has examined other statutory provisions and the circumstances and purposes of the enactment, including "the old law, the mischief, and the remedy," *In re Estate of Pelishek,* 216 Wis. 176, 180, 256 N.W. 700 (1934), to determine legislative intent about retroactivity. *See, e.g., Chappy v. Labor & Industry Review Comm'n,* 136 Wis. 2d 172, 180–83, 401 N.W.2d 568 (1987); *State ex rel. Briggs & Stratton v. Noll,* 100 Wis. 2d 650, 655, 302 N.W.2d 487 (1981); *Wipperfurth v. U-Haul Co. of Western Wis., Inc.,* 101 Wis. 2d 586, 591, 304 N.W.2d 767, (1981).

Furthermore, in *Hunter v. School District, Gale-Ettrick-Trempeleau,* 97 Wis. 2d 435, 293 N.W.2d 515 (1980), and *Department of Revenue v. Dziubek,* 45 Wis. 2d 499, 173 N.W.2d 642

Canons of interpretation are useful aids to determine legislative intent only when the underlying reasons for the rule are served by the rule's application in the case.[22] We conclude that none of the the reasons justifying the presumption against retroactive legislation appear to exist in this case.

Here, as both parties agree, the legislative intent that the new Act apply retroactively is clear on the face of section 177.37(2). The parties disagree only about what property held by Employers Insurance before

---

(1970), the court applied the canon concluding that the statute was prospective only, but only after the court stated that it had searched the legislative history. In these cases the legislative history was not available or was uninformative about legislative intent.

These cases demonstrate that the court does not apply the canon of interpretation against retroactivity mechanistically. As Justice Frankfurter explained, canons of construction do not substitute for judgment:

> . . . canons of construction [cannot] save us from the anguish of judgment. Such canons give an air of abstract intellectual compulsion to what is in fact a delicate judgment, concluding a complicated process of balancing subtle and elusive elements. All . . . have at one time or another leaned on the crutch of a canon . . ..
>
> Insofar as canons of construction are generalizations of experience, they all have worth. In the abstract, they rarely arouse controversy. Difficulties emerge when canons compete in soliciting judgment, because they conflict rather than coverage. For the demands of judgment underlying the art of interpretation, there is no vademecum.

Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L. Rev. 527, 544 (1947) (cited in *Heaton v. Independent Mortuary Corp.,* 97 Wis. 2d 379, 393, 294 N.W.2d 15 (1980)).

[22]See *Town of Ringle v. County of Marathon,* 104 Wis. 2d 297, 303–304, 311 N.W.2d 595 (1981) (the meaning of a statute cannot always be discovered by the application of mechanistic canons).

December 31, 1984, falls within the retroactive ambit of section 177.37(2). The parties disagree about the scope or extent of the retroactive application of section 177.37(2).

Because the legislature has revealed its intent that the legislation applies retroactively, as it has in the statute before us in this case, the rule of interpretation Employers Insurance urges is not applicable. The presumption against retroactive legislation has been overcome by expressed legislative intent. Other rules of statutory interpretation must be used to help the court determine the scope or extent of the expressed legislative intent to make the statute retroactive.

The cardinal rule in all statutory interpretation, as this court has often said, is to discern the intent of the legislature. The court ascertains the legislative intent by examining the language of the statute and the scope, history, context, subject matter and purpose of the statute.

The Treasurer's interpretation of section 177.37(2) is supported by the text of the new Act. It is also supported by the legislative history of the new Act. The fiscal estimates accompanying the new Act and presented to the legislature interpreted the new Act's five-year abandonment period as the Treasurer urges.[23] The court has frequently looked to fiscal estimates submitted to the legislature during consideration of a bill for indication of legislative intent.[24]

---

[23]When a bill is introduced into the Wisconsin legislature, state agencies or departments affected by the bill submit a fiscal estimate of the bill's impact. Section 13.093(2)(a), Stats. 1987–88. The fiscal estimate accompanies the bill during the legislature's deliberations prior to enactment.

[24]See, *e.g., Chappy v. LIRC,* 136 Wis. 2d 172, 183, n.6, 401

226

Both the Insurance Commissioner and the Office of State Treasurer submitted fiscal estimates while the legislature was considering adoption of the new Act. Both fiscal estimates interpreted the bill's five-year abandonment period as applying retroactively to property covered by the old Act but not yet presumed abandoned under the old Act because the ten-year abandonment period had not expired. Thus both predicted that the initial report filed after the effective date of the new Act would show a one-time increased revenue for the state because of the shortening of the abandonment period.

The Insurance Commissioner's fiscal estimate, dated April 5, 1983, states that the "uniform act is presumably intended to apply to the same types of property as present statutes do." It concludes that shortening the abandonment period from ten years to five years "will result in a one-time increase on the first even numbered year following the effective date of enactment of the act. At that time payments will be due for five additional years of abandoned property." The Insurance Commissioner estimated that the additional payment in the first reporting period after enactment of the bill would be approximately $428,400. See Legislative History, Act 408, Acts of 1983, SB 168. (The new Act was adopted May 3, 1984.)

The Office of the State Treasurer's fiscal estimate dated March 25, 1983, also assumed that passage of the new Act would increase revenue because "reports will result in 5 additional years' collections in that one year . . .. [I]t is estimated this one-time increase will be $3.0 million." See Legislative History, Act 408, Acts of 1983,

N.W.2d 568 (1987); *Robinson v. Kunach,* 76 Wis. 2d 436, 444–45, 251 N.W.2d 449 (1977); *Forseth v. Sweet,* 38 Wis. 2d 676, 682, 158 N.W.2d 370 (1968); *State v. Larson,* 133 Wis. 2d 320, 326, 395 N.W.2d 368 (Ct. App. 1986).

SB 168.[25]

Moreover, the Treasurer's interpretation (in contrast to Employers Insurance's interpretation) advances the legislative purpose of the new Act's reduction of the abandonment period. By adopting the Treasurer's interpretation of section 177.37(2), the reporting and delivery requirements imposed on holders of unclaimed property are accelerated so that owners may be reunited with their property more promptly.

Employers Insurance's reading of the statute seems strained. Employers Insurance supports its interpretation of section 177.37(2) by examining the drafting history of the Uniform Act. It points to a Comment by the National Conference of Commissioners in Uniform State Laws to section 37 of the Uniform Unclaimed Property Act, the provision analogous to section 177.37(2), Stats. 1987–88. The Comment states, *inter alia,* that the new Act may provide for the presumption of abandonment of one type of property, namely, underlying share certificates, that arguably was not subject to a presumption of abandonment under the old Act. See Comment, Uniform Unclaimed Property Act of 1981, section 37, 8A Uniform Laws Annotated 676 (1983).

This Comment to the Uniform Law upon which Employers Insurance relies is, when read in its entirety, itself ambiguous. It can be read to limit the application of section 177.37(2) to new types of property or it can be read as a warning to holders of underlying shares not to overlook that type of property in filing their first report

---

[25]Apparently, the Insurance Commissioner's smaller estimate is based on the presumption that the annualized revenue collected under the old Act and new Act will remain the same. The Treasurer presumes that revenue collections will increase under the new Act because the new Act is more specific in identifying the property to be reported.

under the new Act. Employers Insurance's interpretation of section 177.37(2) does not seem applicable to Wisconsin because the old Act covered underlying shares, the only property arguably included in the Uniform Unclaimed Property Act of 1981 that was omitted under the earlier Uniform Disposition of Unclaimed Property Act. See section 177.05(2), Stats. 1981–82.

Finally when we read section 177.37(2) in the context of the retroactive application of the Wisconsin Unclaimed Property Acts to unclaimed property held before their effective dates, the legislative intent that the section is retroactive for all types of property covered by the new Act appears clear.

When we examine the text and the scope, history, context, subject matter and purpose of the new Act, we conclude that the legislature intended sec. 177.02(1) and sec. 177.37(2) to apply the five-year abandonment period retroactively to uncashed worker's compensation benefit checks issued before December 31, 1984.

## III.

The third issue is whether a statute of limitations bars any part of the State's cause of action for delivery of property presumed abandoned under chapter 177, Stats. 1981–82.

Employers Insurance did not report uncashed worker's compensation benefit checks as property presumed abandoned. The old Act affected instruments issued as far back as 1964, and the Treasurer seeks to recover from Employers Insurance money represented by these uncashed checks issued since 1964. The old Act does not contain a statute expressly limiting the time during which the State may bring an action to enforce

delivery of property covered by the Act.[26]

Employers Insurance asked the circuit court for a declaratory ruling that the Treasurer's claim to all property presumed abandoned, including uncashed worker's compensation benefit checks, which should have been but were not reported before the biannual report of May 1, 1978, is barred by the six-year statute of limitations in section 893.93(1)(a), Stats. 1987–88.[27] Employers Insurance concluded that the May 1, 1976, date was determinative for the six-year period because the Treasurer commenced an enforcement action in September of 1983.[28] The Treasurer asserted that if any statute of limitation applies, it is section 893.87, Stats. 1987–88, creating a ten-year statute of limitations,[29] and that the

---

[26]According to the Comments of the Commissioners on Uniform State Laws, the old Act can be interpreted as subjecting a holder to suit for an indeterminate period. See Comments, Uniform Unclaimed Property Act (1981), sec. 29, 8A Uniform Laws Annotated (1983), 668.

The new Act has a statute of limitations. It provides that "no civil action or proceedings with respect to any duty of a holder under this chapter may be commenced more than 5 years after the duty arose." Section 177.29(2), Stats. 1987–88. Neither party, however, argues that this provision applies to this case, and we do not consider it.

[27]Section 893.93(1)(a), Stats. 1987–88, provides:

(1) The following actions shall be commenced within 6 years after the cause of action accrues or be barred:

(a) An action upon a liability created by statute when a different limitation is not prescribed by law.

[28]The Treasurer and Employers Insurance apparently agree that if section 893.93(1)(a) applies, only the Treasurer's cause of action for uncashed checks and drafts issued in 1964 and 1965 is barred.

[29]Section 893.87, Stats. 1987–88, provides:

Any action in favor of the state, if no other limitation is pre-

230

statute of limitations for unclaimed property that should have been reported on May 1, 1976, had not yet run.

The circuit court did not decide whether section 893.93(1)(a) or section 893.87 applied to the Treasurer's right to enforce chapter 177, Stats. 1981–1982. The circuit court ruled in favor of the Treasurer, concluding that "any such statute [of limitations] is tolled by [Employers Insurance's] failure to report."

Employers Insurance filed a cross appeal seeking review of this part of the declaratory judgment that the statute of limitations was tolled. Employers Insurance argues that the Treasurer's cause of action for delivery of property accrued on each date its biannual report was due, even though the report was not filed, and that the principle of tolling is not applicable to this case.

Sections 893.93(1)(a) and 893.87 declare that an action shall be commenced within six or ten years respectively "after the cause of action accrues." Once a cause of action accrues, the statute of limitations begins to run. Therefore we must determine when the Treasurer's cause of action to enforce the delivery or payment of property presumed abandoned accrued for purposes of triggering the running of the statute of limitations.

The general rule is that "a cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906). See

scribed in this chapter, shall be commenced within 10 years after the cause of action accrues or be barred. No cause of action in favor of the state for relief on the ground of fraud shall be deemed to have accrued until discovery on the part of the state of the facts constituting the fraud.

also *Les Moise, Inc. v. Rossignol Ski Company, Inc.*, 122 Wis. 2d 51, 57, 361 N.W.2d 653 (1985).

Employers Insurance argues that the Treasurer's cause of action for payment or delivery of property presumed abandoned against holders of the property accrues on the date the statute requires abandoned property to be reported to the Treasurer, even though no report was filed. Section 177.11(1), (4), Stats. 1981–82, required holders of property presumed abandoned to file biannual reports on May 1 of every even-numbered year detailing property presumed abandoned during the preceding two calendar years.[30] Employers Insurance contends that on each biannual reporting date the Treasurer's cause of action accrues because the Treasurer has a claim capable of present enforcement, a party against whom it may be enforced, and a present right to enforce that claim.

Employers Insurance cites two cases to support its position that the Treasurer's cause of action for delivery of property presumed abandoned accrued on each reporting date and not when the property is actually reported.

In *State v. City of Milwaukee*, 145 Wis. 131, 129 N.W. 1101 (1911), 152 Wis. 228, 138 N.W. 1006 (1913), upon which Employers Insurance relies, the court allowed the statute of limitations to bar the State's

---

[30]Section 177.11(1), Stats. 1981–82, provides:

Every person holding funds or other property, tangible or intangible, presumed abandoned under this subchapter shall report to the office of the state treasurer with respect to the property as hereinafter provided.

Section 177.11(4), Stats. 1981–82, provides:

The report shall be filed on or before May 1 of every even-numbered year for the preceding 2 calendar years. The office of the state treasurer may postpone the reporting date upon written request by any person required to file a report.

attempt to recover the proceeds from fines collected by Milwaukee from 1859 to 1899 despite the city's failure to comply with the city's statutory duty to report and deliver the proceeds annually.

In *Milwaukee v. Firemen Relief Association,* 34 Wis. 2d 350, 149 N.W.2d 589 (1967), the second case upon which Employers Insurance relies, the court allowed the statute of limitations to bar the Association's claim against the city despite the city's failure to comply with the city's statutory duty to pay to the firefighter's relief fund on or before the first day of March in each year.

We conclude that both cases differ significantly from the case at bar. The statutes in those cases contemplated that an annual report or payment would definitely be made on or before a fixed date each year. Under those statutes, it was clear that Milwaukee had to fulfill a statutory obligation each year. A demand for delivery of money was capable of present enforcement as soon as the annual date for paying the money passed; there was a party against whom the claim could be made; and a party who had the present right to enforce it. Thus in those cases a new cause of action accrued on each reporting date, whether or not a report was filed.

In this case the statutes do not contemplate that the party in question has unclaimed property that must be reported. Thus Employers Insurance's failure to report uncashed worker's compensation benefit checks on the date the report was due did not notify the Treasurer that Employers Insurance held this property that was presumed abandoned. Unlike the two cases on which Employers Insurance relies, no action may be said therefore to accrue in this case on the date the report was due.

Furthermore, even if the property presumed abandoned was reported, we do not agree with Employers

Insurance's assertion that the reporting date under section 177.11(4), Stats. 1981–82, triggers the statute of limitations for purposes of the Treasurer's action to enforce delivery of the property. Employers Insurance's focus on the reporting statute, section 177.11(1), (4), prematurely dates the Treasurer's enforcement rights over abandoned property under the statute.

A holder had no present duty to deliver the property to the Treasurer on the date the report is due. The statutes provided that within 120 days from the holder's filing of the report required by section 177.11, the Treasurer must publish a notice of names of persons appearing to be owners of abandoned property. Section 177.12, Stats. 1981–82. The notice advises the owners that they may claim the property from the holder within a certain time and that thereafter the property will be placed in the custody of the Treasurer. The statutes further provided that the holder who has filed a report under section 177.11 will be notified by the Treasurer when the owner's time for claiming the property from the holder has expired and that the holder shall then pay or deliver to the Treasurer all abandoned property specified in the report within 20 days from notification by the Treasurer. Section 177.13(1), Stats. 1981–82.

Thus the statutes provided that the Treasurer's right to enforce payment or delivery of property presumed abandoned arises after the date for reporting the property presumed abandoned. Once the holder has filed a report identifying property presumed abandoned, the Treasurer must request that the property be turned over to the state. Section 177.13(1) provided:

> Every person who has filed a report under s. 177.11 shall, within 20 days after the office has notified it that the time for claiming the property from the holder has expired . . ., pay or deliver to the

office all abandoned property specified in the report
. . ..

After the Treasurer has notified the holder pursuant to section 177.13(1), Stats. 1981–82, the Treasurer's cause of action for delivery or payment is capable of present enforcement against the holder of the property. The Treasurer's cause of action for delivery of property presumed abandoned does not accrue under section 177.11, Stats. 1981–82, as Employers Insurance urges, on the date each biannual report is due even if the holder duly files the report reporting the property presumed abandoned. It is only after property presumed abandoned is reported and the Treasurer notifies the holder pursuant to section 177.13(1) that the holder becomes obligated to pay or deliver it to the Treasurer.

In its brief Employers Insurance contends that holding that no cause of action accrues on the date the report is required to be filed could frustrate the State's collection efforts. A holder of unclaimed property could, Employers Insurance explains, block the State from ever having a claim capable of present enforcement by simply refusing to report property presumed abandoned pursuant to chapter 177, Stats. 1981–82. We do not believe, however, that our interpretation of the statute leaves the State powerless to act when a holder fails to report abandoned property. The State can examine the records of any person "if it has reason to believe that the person has failed to report property that should have been reported." Section 177.23, Stats. 1981–82. Furthermore, if no report is filed and "it shall appear" to the Treasurer that certain property has been or may be abandoned, the Treasurer can obtain the required information or the delivery of the property by demand or by instituting

proceedings. Section 177.24(1), (2), Stats. 1981-82.[31]

We read sections 177.23 and 177.24(1), (2) as expressly giving the Treasurer tools to obtain information about or delivery of property presumed abandoned. We do not believe the legislature intended these investigative and enforcement procedures to start the statute of limitations running on the Treasurer's cause of action for delivery of unreported abandoned property as of the date the report is due, as Employers Insurance urges.[32] If

---

[31]Section 177.24(1), (2), Stats. 1981–82, provides:

Proceedings to compel report or delivery of abandoned property. (1) Whenever it shall appear to the treasurer that certain property held by any person as defined in s. 177.01(8) has been or may be abandoned but he has not received a report or delivery of such property, he shall make demand for or request the attorney general to institute proceedings in the court of appropriate jurisdiction to obtain the required information or delivery of the property.

(2) In any action to enforce delivery of abandoned property, the attorney general shall bring a court action in the name of the state of Wisconsin for the purpose of determining the issues of actual abandonment of the property and the rights of this state to such property and to procure a judgment transferring right and title to the property, including any increments thereon, to the state as custodian thereof. The action may be commenced in the circuit court of the county in which the owners had their last-known address in this state or in the county in which the holder of the property resides or has its principal office or place of business. If information received by the attorney general indicates that the owners of the abandoned property were at the time of abandonment residents or inhabitants of diverse counties or that the holders reside or have their principal offices in diverse counties, the action may be brought in the circuit court for Dane county. All known holders or owners of the abandoned property shall be named as parties defendant and process shall be served in the same manner as in other civil suits.

[32]Employers Insurance interprets section 177.24(1), (2), as declaring that the Treasurer's cause of action against holders of unreported property accrues on the date the Treasurer contends the property should have been reported. Because the Treasurer has the power to investigate as soon as the due date for the report

236

we were to accept Employers Insurance's reasoning, we would impose an unreasonable burden on the State to require it to monitor all possible holders covered by the Act. We think it clear that the legislature did not intend the Treasurer to be required to take action every two years against all possible holders to discover the existence or nonexistence of property subject to the old Act. We conclude the legislature put the burden of reporting on the holder under the old Act.[33]

We conclude, as other courts who have considered arguments similar to those of Employers Insurance have concluded,[34] that the statutory scheme depends on self-reporting. In this case the statute of limitations did not

passes, Employers Insurance contends the Treasurer's cause of action accrues on the date the report is due and the statute of limitations begins to run on that date.

[33]The Treasurer suggests another interpretation of section 177.24. He suggests whereby his cause of action may accrue "when it shall appear to the Treasurer that certain property held by any person has been or may be abandoned but he has not received a report or delivery of such property." This interpretation would make the accrual of the state's claim based on the Treasurer's knowledge or the Treasurer's "discovery." We need not consider this interpretation in this case.

[34]Our interpretation that the Treasurer's cause of action does not accrue on the date the report is due when the holder did not report property presumed abandoned has been adopted in other jurisdictions interpreting statutes similar to ours. See *Sennett v. Insurance Co. of North America,* 432 Pa. 525, 247 A.2d 774 (1968); *State v. U.S. Steel Corp.,* 22 N.J. 341, 126 A.2d 168 (1956); *Blue Cross of Northern California v. Cory,* 120 Cal. App. 3d 723, 174 Cal. Rptr. 901 (1981); *Travelers Express Co., Inc. v. Cory,* 664 F.2d 763 (9th Cir. 1981); *Treas. and Rec. Gen. v. John Hancock Mut. Life Ins. Co.,* 388 Mass. 410, 446 N.E.2d 1376 (1983).

commence to run against the Treasurer's cause of action for delivery or payment of property presumed abandoned on the date the report was due.

For the reasons set forth, we affirm the judgment of the circuit court in part and reverse it in part.

*By the Court.*—The judgment of the circuit court is affirmed in part and reversed in part.

Justice Donald Steinmetz withdrew from participation.