PHOENIX INSURANCE CO.,
Plaintiff,

v.

NATIONAL BANK & TRUST COMPANY
OF CENTRAL PENNSYLVANIA,
Defendant.

Civ. No. 70–262.

United States District Court,
M. D. Pennsylvania.

July 12, 1972.

John F. Myers, Washington, D. C., Macey E. Klein, Harrisburg, Pa., for plaintiff.

Eugene Campbell, Smith & McCleary, York, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

This is a subrogation claim against National Bank & Trust Company of Central Pennsylvania (hereinafter referred to as National Central) by the Phoenix Insurance Company, subrogee of the Samuel Rosenthal Foundation. Before the court is the plaintiff's motion for summary judgment which, considering the undisputed facts fairly drawn from the pleadings and affidavits before the court, we conclude must be granted.

Between the dates of September 2 and September 4, 1967, a fifty thousand dollar ($50,000) 6% Consolidated Federal Home Loan Bond (Serial No. 420 G–1967) payable to bearer, was stolen from the offices of the parent corporation of the Samuel Rosenthal Foundation, in Cleveland, Ohio. The bond had been purchased by the Samuel Rosenthal Foundation on October 25, 1966. Immediately upon discovery of the theft notice was given to the Division of Loans and Currency, Bureau of Public Debt, Fiscal Service, Treasury Department, Washington, D. C., and subsequently Application For Relief on Account of Lost, Stolen or Destroyed United States Securities was made with the Division of Loans and Currency. On March 28, 1968 the plaintiff, as insurance carrier, paid the Samuel Rosenthal Foundation the face amount of the stolen bond and was assigned all rights to the bond or the proceeds therefrom.

On May 31, 1968, approximately seven months after the bond's maturity date of October 26, 1967, the stolen bond was presented to National Central, in York, Pennsylvania, by one Victor Dell'Alba. The bank made immediate telephonic inquiry of the Federal Reserve Bank in Philadelphia to determine if the bond could be submitted for redemption. Upon receiving clearance Dell'Alba's account was credited with the face value of the instrument.[1] The bond was then presented for payment by National Central at the Philadelphia Branch of the Federal Reserve Bank and National Central's Federal Reserve account was credited with the value of the instrument.

This court has jurisdiction under 28 U.S.C. §§ 1332 and 1348 (1965) by virtue of the diversity of citizenship and the amount in controversy in excess of $10,000.00.

The parties agree that the bond in question is an investment security as that term is defined by § 8–102 of the Uniform Commercial Code (12A P.S. § 8–102 (1970)).[2] Our decision is, therefore, necessarily controlled by Article 8 of the Uniform Commercial Code (12A P.S. § 8–101 et seq. (1970)).

Simply stated, the plaintiff contends that inasmuch as the defendant purchased the stolen bond after six months from the maturity date, according to § 8–305 of the Uniform Commercial Code (12A P.S. § 8–305 (1970))[3] it took the

---

1. The bond provides upon its face: "Principal and interest payable at any federal reserve bank or branch thereof or at such other agency or agencies as the federal home loan bank may designate from time to time."

2. Section 8–102(1)(a) and (b) provides:
   "(a) A 'security' is an instrument which
   "(i) is issued in bearer or registered form; and
   "(ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
   "(iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

"(iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.
"(b) A writing which is a security is governed by this Article and not by Uniform Commercial Code—Commercial Paper even though it also meets the requirements of that Article. This Article does not apply to money."

3. Section 8–305 provides:
   "An act or event which creates a right to immediate performance of the principal obligation evidenced by the security or which sets a date on or after which the security is to be presented or surrendered for redemption or exchange does not of it-

bond with notice of the adverse claim and is therefore liable to the plaintiff as the true owner's subrogee for the value of the bond.

■ National · Central, while admitting that it took the bond after six months from the maturity date, contends that it was not a "purchaser" of the bond as that term is defined by § 1–201(33) (12A P.S. § 1–201(33) (1970)), but was acting innocently and in good faith, solely as the agent for its depositor, Victor Dell'Alba. As an agent acting in good faith, § 8–318 of the Code would insulate it from liability for conversion of the instrument.[4] We hold, however, that in dealing with the bond in question, the defendant became a "purchaser" as defined by the Uniform Commercial Code and was not acting merely as an agent pursuant to instructions. Section 1–201(32) (12A P.S. § 1–201(32) (1970)) defines "Purchase" to include taking an instrument by negotiation. The bond herein involved was a bearer instrument and as such was negotiated by delivery (12A P.S. § 3–202 (1970)) occurring upon the voluntary transfer of possession (12A P.S. § 1–201(14) (1970)). Therefore, when the bond was negotiated to National Central upon delivery and if National Central thereby acquired an interest in the bond, it became a purchaser. Upon delivery of the bond National Central credited Dell'Alba's account with the face value of the instrument. National Central then sent the bond to Philadelphia where, upon redemption, National Central's account with the Federal Reserve Bank was credited with the value of the bond.

In our opinion this procedure is sufficient to sustain the conclusion that National Central acquired an interest in the stolen bond.

The defendant relies upon the case of First 'Nat'l Bank of Blairstown v. Goldberg, 340 Pa. 337, 17 A.2d 377 (1941), decided before the enactment of the Uniform Commercial Code in Pennsylvania.[5] In that case the Pennsylvania Supreme Court held that an attorney acting as agent in processing the sale of stolen bearer bonds through a bank was not liable for conversion if he acted in good faith. The proceeds of the sale were deposited by the processing bank in the account of the attorney, who immediately turned the proceeds over to his client. Neither the bank nor the attorney were held liable for conversion of the bonds. The case is arguably distinguishable, however, as to the liability of the bank. There the attorney's account was not credited until after the proceeds of the sale were remitted to the bank by the broker. In the instant case, Dell'Alba's account was credited before the bond was redeemed by the bank. The bank then submitted the bond for redemption and was credited with the proceeds.

As a purchaser, National Central is subject to the plaintiff's adverse claim unless it can show that it is a bona fide purchaser; that is, it must be a purchaser for value in good faith and without notice of any adverse claim (12A P. S. § 8–302 (1970)).

■ The defendant suggests that it may have acquired the rights of a bona fide purchaser under the "shelter" provision of § 8–301(1) (12A P.S. § 8–

self constitute any notice of adverse claims except in the case of a purchase

"(a) after one year from any date set for such presentment or surrender for redemption or exchange; or

"(b) after six months from any date set for payment of money against presentation or surrender of the security if funds are available for payment on that date."

4. Section 8–318 provides:

"An agent or bailee who in good faith (including observance of reasonable commercial standards if he is in the business of buying,

selling or otherwise dealing with securities) has received securities and sold, pledged or delivered them according to the instructions of his principal is not liable for conversion or for participation in breach of fiduciary duty although the principal had no right to dispose of them."

5. The Pennsylvania Bar Association notes to the Uniform Commercial Code suggest that that holding (in Goldberg) is still viable via Section 8–318 (12A P.S. § 8–318 (P.B.A. Comments (1970))).

301(1) (1970))[6] if its transferor, Victor Dell'Alba, was a bona fide purchaser.[7] National Central contends that it is incumbent upon the plaintiff to prove that it did not acquire the rights of a good faith purchaser for value. However, Section 8–105(2)(d) (12A P.S. § 8–105(2)(d) (1970)) provides:

> "[A]fter it is shown that a defense or defect exists the plaintiff has the burden of establishing that he or some person under whom he claims is a person against whom the defense or defect is ineffective."

This section clearly places the burden on the defendant to show that it has acquired the rights of a good faith purchaser. As the defendant has neither alleged nor submitted affidavits to prove that its transferor was a good faith purchaser for value, we must conclude for purposes of deciding plaintiff's motion that National Central did not accede to the rights of a good faith purchaser by virtue of the "shelter" provision of Section 8–301.

By acquiring the bond after six months from its date of payment, according to § 8–305, National Central purchased with notice of an adverse claim and therefore cannot be a bona fide purchaser. The defendant contends, however, that by making an immediate inquiry of the Federal Reserve Bank it discharged its burden as to the presumed notice of the existence of an adverse claim created by the staleness of the instrument. We disagree. Instead, we choose to read § 8–305 as implying that one who purchases a security after six months from its date of payment takes the instrument at its peril. Therefore, there can never be a bona

fide purchaser of a stale security (as defined in § 8–305). One of the purposes of § 8–305 is to assure that stale instruments will be presented directly for payment rather than transferred to third persons. If the holder's possession is rightful, there is no reason why this procedure will not be adequate.

This memorandum opinion will constitute our findings of fact and conclusions of law.

An order granting plaintiff's motion for summary judgment will be entered.

---

6. Section 8–301(1) provides:
"Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey except that a purchaser who has himself been a party to any fraud or illegality affecting the security or who as a prior holder had notice of an adverse claim cannot improve his position by taking from a later bona fide purchaser. 'Adverse claim' includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security."

7. As a bona fide purchaser or one with the rights of a bona fide purchase, National Central would have acquired the security free of any adverse claim. (12A P.S. § 8–301(2) (1970))