Erwin J. PLESKO, Plainiff-Respondent-Cross-Appel-
lant,

v.

FIGGIE INTERNATIONAL, Defendant-Third Party Plain-
tiff-Appellant-Cross Respondent,

v.

DEAN WITTER & CO., Third Party Defendant. [Case No.
93–2335.]

Erwin J. PLESKO, Plaintiff,

v.

FIGGIE INTERNATIONAL, Defendant-Third Party Plain-
tiff-Appellant,

v.

DEAN WITTER & CO., Third Party Defendant-
Respondent. [Case No. 93–3023.]

Court of Appeals

*Nos. 93–2335, 93–3023. Submitted on briefs August 2,
1994.—Decided December 20, 1994.*

(Also reported in 528 N.W.2d 446.)

764

For the defendant-third party plaintiff-appellant-cross respondent and defendant-third party plaintiff-appellant the cause was submitted on the briefs of *Jane C. Schlicht* of *Godfrey & Kahn, S.C.* of Milwaukee.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Paul G. Sherburne,* of counsel, of *Petrie & Stocking, S.C.* of Milwaukee.

For the third party defendant-respondent the cause was submitted on the briefs of *Michael R. Wherry and Louis F. Raymond* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Figgie International (Figgie) appeals from a judgment that orders it to register an appropriate number of its shares of common stock in the name of Erwin J. Plesko and that denies it indemnification from Dean Witter & Co. Plesko cross-appeals from a judgment that denies his claim to dividends declared on the same stock. Because the trial court's finding that Plesko was a bona fide purchaser was not clearly erroneous, because Plesko's claim for registration of transfer was timely commenced, and because Figgie's claim against Dean Witter for indemnification is barred by the statute of limitations, we affirm the judgment appealed by Figgie; however, because the trial court erred in refusing Plesko's claim for dividends from the time he presented the stock for registration, we reverse that part of the judgment cross-appealed by Plesko.

## BACKGROUND

In June 1967, Plesko purchased three stock certificates representing 300 shares of Interstate Engineering Corp. (Interstate). The certificates were registered in the street name of Dean Witter & Co., were endorsed in blank, and were delivered to Plesko's agent, the Associated Bank of Commerce of Milwaukee (Associated Bank). In November 1967, Interstate and Automatic Sprinkler Corporation of America (Automatic) merged, resulting in Automatic as the surviving company. By terms of the merger agreement, record shareholders of Interstate were notified to tender their stock certificates in exchange for which they would receive stock certificates in Automatic. In 1970, Automatic was renamed ATO. Plesko never became the registered owner of the certificates on the books of ATO.

In April 1970, an affidavit of lost stock certificate and an indemnity bond in lieu of Interstate's stock certificates 84,708, 84,709, and 84,710 were presented to ATO's transfer agent, Marine Midland Bank. Dean Witter & Co. presumably presented the affidavit and requested that new ATO certificates be issued to Kidder Peabody as replacement for the Interstate certificates. Marine Midland complied and the old certificates were canceled. In 1981, ATO was renamed Figgie International (Figgie).

Meanwhile, in 1972, Plesko pledged the Interstate stock to secure a loan from First National Bank of Boston. In September 1976, the Bank of Boston returned the certificates to Plesko which were then placed in his wife's safety deposit box. When Plesko's wife died in December 1987, he found the certificates in the safety deposit box. In January 1988, Plesko presented the certificates to his broker, Paine Webber,

for purposes of registration and sale. Paine Webber, as Plesko's nominee, presented the three Interstate certificates, 84,708, 84,709, and 84,710 to Figgie's new transfer agent, the Bank of Boston, and requested that new Figgie certificates be issued in Paine Webber's name. The Bank of Boston discovered that the same certificates had been canceled in 1970 when Dean Witter presumably presented the affidavit and bond. Thus, the Bank of Boston refused the request and kept the certificates.

When efforts to register his stock proved futile, Plesko filed suit against Figgie. He sought an equitable remedy to compel registration in his name of the equivalent amount of Figgie stock as represented by the 300 shares of Interstate stock, plus ancillary damages for lost dividends. In the alternative, in an action-at-law, based on a conversion theory, he sought damages for the loss of value of the stock and dividends because Figgie refused to register the transfer. Figgie commenced a third-party claim against Dean Witter & Co., the last known registered owner who presumably directed cancellation of the Interstate certificates and the reissuance of new certificates.[1]

After a bench trial, the trial court determined that: (1) Plesko was a bona fide purchaser; (2) Plesko's claim for Figgie stock survived the statute of limitations and he was entitled to the issuance of Figgie stock; (3) Plesko's conversion claim for damages for loss of value of the stock was barred by the six-year statute of limitations; (4) Plesko was not entitled to dividends

---

[1] Plesko joined his original broker, Paine Webber, in his claims, but later dismissed the action. Figgie joined First National Bank of Boston and Marine Midland Bank, its two transfer agents but, prior to trial, dismissed both of these claims.

because he never made a claim for the dividends; and (5) Figgie's claim against Dean Witter was barred by the six-year statute of limitations. Figgie now appeals and Plesko cross-appeals portions of the trial court's judgments.

## DISCUSSION

### I. FIGGIE'S APPEAL.

Figgie's appeal consists of three contentions. First, it claims the trial court erred in finding that Plesko was a bona fide purchaser who is entitled to an appropriate number of shares. Second, it claims Plesko's claims were time-barred either by the statute of limitations or the doctrine of laches because he waited twenty-four years before pursuing a claim. Finally, Figgie claims the trial court erred in denying its indemnification claim against Dean Witter.

#### A. Bona Fide Purchaser.

Figgie first claims the trial court erred in concluding that Plesko was a bona fide purchaser for value because: (1) there was no proof of value; (2) Plesko did not take delivery at the time he purportedly gave value; (3) Plesko had notice of an adverse claim when he took delivery and failed to act in good faith; and (4) Plesko did not personally present the certificate of stock for registration of transfer. We shall examine each of these contentions *seriatim*.

When the trial court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony. *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30,

775

33 (1977); *Milbauer v. Transport Employes' Mut. Benefit Soc'y*, 56 Wis. 2d 860, 865, 203 N.W.2d 135, 138 (1973). When evidence supports the drawing of either of two conflicting but reasonable inferences, the trial court, and not this court, must decide which inference to draw. *Onalaska Elec. Heating, Inc. v. Schaller*, 94 Wis. 2d 493, 501, 288 N.W.2d 829, 833 (1980).

Section 408.302(1)(a), STATS., defines a bona fide purchaser as one who pays value for shares, in good faith, without notice of any adverse claim and who received delivery at the time value is given.

### 1. Value.

Figgie claims Plesko failed to meet his burden of proof on value. As noted, a trial court's findings of fact are reviewed under the clearly erroneous standard; however, whether Plesko met his burden of proof is a question of law that this court reviews *de novo*. Figgie bases this assertion on the fact that Plesko had no recollection of how and when he paid for the Interstate stock, his broker did not know how much was paid, nor did his broker have any record to substantiate the purchase. Plesko stated he directed his broker to purchase the shares and have them delivered to the Associated Bank. Yet, no employee of the bank could confirm that such delivery occurred nor could Plesko's broker confirm a delivery.

Plesko, however, testified that when he purchased stock, he utilized a "payment against delivery" system that authorized his bank to pay for stock only when it was delivered to the bank in acceptable form. He stated he would not have possession of the securities unless he paid market price for them, which constitutes the giving of value. Three witnesses confirmed that this

type of purchase practice was common in 1967. There was also testimony that Plesko physically pledged the certificates to the Bank of Boston and received them back again upon liquidation of the secured debt.

The trial court determined, based on Plesko's own testimony and his broker at the time, coupled with Plesko's later pledging of the certificates, that he had paid value for the shares in question and, by inference, received possession of the same.

From this review, it is obvious there was a basis in the record for this finding. Therefore, we conclude the trial court's findings were not clearly erroneous and we conclude that sufficient facts exist to support the trial court's conclusion that Plesko met his burden of proof.

## 2. Delivery.

Figgie also argues that Plesko is not a bona fide purchaser because he did not prove delivery of the stock certificates, physically or constructively, at any time prior to reissuance in 1970. Figgie bases this assertion on § 408.313(1), STATS.,[2] which sets forth how "delivery" occurs. Figgie argues Plesko did not prove

---

[2] If physical delivery does not occur, § 408.313(1)(c), (d)1 or (g), STATS., must be satisfied.

Those subsections provide as follows:

(c) At the time his or her financial intermediary acquires possession of a certificated security specially endorsed to or issued in the name of the purchaser;

(d) At the time a financial intermediary, not a clearinghouse, sends him or her confirmation of the purchase and also by book entry or otherwise identifies as belonging to the purchaser:

 1. A specific certificated security in the financial intermediary's possession;

 . . . .

that "delivery," as defined by this statute, actually occurred.

Plesko counters by asserting that because he purchased the stock in 1967, Figgie's reliance on § 408.313(1), STATS., which is the codification of the 1977 amendments of the Uniform Commercial Code, is misplaced. Plesko argues that the definition of "delivery" that he must prove is governed by pre-1977 code.[3]

Figgie claims that Plesko waived this argument because he did not raise it at the trial court level. The rule that "issues not raised or considered in the trial court will not be considered for the first time on appeal . . . is not absolute and exceptions are made." *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145 (1980). Exceptions are made for questions of law that merit discussion. *Id.* Here we are examining the definition of the term "delivery" and whether the current statute defining delivery or its predecessor applies. This inquiry is a question of law that merits discussion. Because the statutory language of § 408.313(2), STATS., does not require retroactive application, and the general rule is to apply legislation prospectively, we conclude that Plesko's delivery requirement is gov-

---

(g) At the time appropriate entries to the account of the purchaser or a person designated by him or her on the books of a clearing corporation are made under § 408.320[.]

[3] It is conceded by all parties that the issues presented are governed by art. 8 of the UNIFORM COMMERCIAL CODE. Article 8 has essentially been adopted in the same form in both Wisconsin and Delaware, the state of Figgie's incorporation. *See* Del. Code tit. 6, § 8-101 (1993), *et seq*. The law of Delaware governs Figgie's responsibilities regarding transfer registration. Since, however, it is conceded that the Delaware code is the same as Wisconsin's, we cite only the Wisconsin provisions.

erned by the pre-1977 code.[4] *See Schulz v. Ystad*, 155 Wis. 2d 574, 597, 456 N.W.2d 312, 320 (1990). Thus, we examine the calls of the pre-1977 code definition of delivery as it applies to the facts found by the trial court to determine if delivery occurred.

The pre-1977 code, in pertinent part, reads:

(1) Delivery to a purchaser occurs when:

(a) He *or a person designated by him acquires possession of a security* . . . .

Section 408.313, STATS., 1973 (emphasis added).

At trial, Plesko testified that he depended on Associated Bank, his agent, to accept delivery of the stock certificates because he was out of town a great amount of time. He further stated that the Associated Bank received the stock certificates in June 1967 and, at that time, the bank paid for the certificates. Based on this testimony, the trial court found, as a matter of fact, "he paid the market price at the time his bank received delivery of the certificates through the Associated [ ] Bank in June, 1967 via 'payment against delivery.' " From our examination of the record, this finding is not clearly erroneous. As a result, we conclude that Plesko satisfied the delivery requirement because he designated Associated Bank to "acquire possession" on his behalf.

### 3. Knowledge of Adverse Claim/Duty to Act.

[4] To accept Figgie's statutory argument would be tantamount to giving retroactive effect to the statute against which there is a presumption "unless the statutory language clearly reveals by express language or necessary implication an intent that it apply retroactivity." *Employers Ins. of Wausau v. Smith*, 154 Wis. 2d 199, 223 n.20, 453 N.W.2d 856, 865 n.20 (1990).

Figgie claims that when Plesko did take delivery of the stock, he had knowledge of an adverse claim and, therefore, is not a bona fide purchaser. The trial court, as the finder of fact, determined that Plesko received the Interstate certificates, endorsed in blank, through the Associated Bank in June 1967, and that Plesko had "no notice or knowledge of any defect in title or adverse claim until [after presentment by Paine Webber in] August, 1988." Because there is a basis in the record for the trial court's findings of fact, they are not clearly erroneous.

Figgie argues that Plesko had notice of an adverse claim arising out of two sets of circumstances: (1) that Plesko had no entitlement to dividends because Dean Witter was the registered owner; (2) that Plesko had knowledge of the merger between Interstate and Automatic and, as a result, the possible dilution of his ownership rights.

██

As for the first set of circumstances, Figgie asserts that an adverse claim existed because Dean Witter, as the registered owner, was entitled to dividends instead of Plesko. As Plesko voluntarily chose this arrangement, we fail to see how this set of circumstances constitutes an adverse claim. Moreover, Figgie presents no authority to support its assertion other than the suggestion that an adverse claim is not restricted to an adverse ownership interest.[5] There-

---

[5] Figgie cites only *Pentech Int'l, Inc. v. Wall Street Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993), *Plano Sav. & Loan Ass'n v. Irving Trust Co.*, 695 F.2d 506, 512 (11th Cir. 1983), and *E.F. Hutton & Co. v. Manufacturers Nat'l Bank of Detroit*, 259 F. Supp. 513 (E.D. Mich. 1966). We deem these cases completely inapposite because, without exception, they all involve circumstances, unlike the present one, in which the court concluded

fore, we summarily reject it. *See Lechner v. Scharrer*, 145 Wis. 2d 667, 676, 429 N.W.2d 491, 495 (Ct. App. 1988) (appellate court need not consider arguments unsupported by citations to authority).

The second set of circumstances relates to Plesko's level of knowledge that the Interstate-Automatic merger had been approved and that record shareholders had the right to exchange their shares for those in the surviving company. Figgie argues that Plesko knew about the merger and this knowledge translated into knowledge of an adverse claim because of the probability that the merger would result in dilution of the stock. Figgie's logic eludes us.

Plesko denies that he knew the merger had actually occurred and, at the very least, Plesko would have believed he had a surviving ownership interest in Automatic. He had no reason to believe his ownership interest would be completely eliminated or fully diluted. Thus, when he solicited Paine Webber to investigate the extent of his ownership interest to ascertain its value in 1988, his actions were wholly consistent with that of a bona fide purchaser of stock in a company that had been merged into another. The circumstances are rare indeed in the aftermath of a merger by two publicly held companies when a stockholder is entitled to keep its *same* percentage ownership interest in the surviving company. To argue, however, that this diminution in ownership interest is tantamount to knowledge of an adverse claim, thereby disqualifying a stock purchaser from the status of a bona fide purchaser, is an exercise in *reductio ad absurdum*. To validate such an assertion in a merger context would

that the transferee was on notice of an adverse third-party claim or should have been.

automatically disqualify most stockholders in the surviving corporation for bona fide purchaser for value status. We find no support in law or logic to warrant the conclusion that ownership dilution is equivalent to evidence of an adverse claim.[6]

Figgie further argues that because Plesko, as indicated by the record, is a commercially sophisticated purchaser, he had a duty to act in a commercially reasonable manner, i.e., engage in due diligence by making inquiry at the time of the delivery of the certificates. Figgie reasons that the exercise of reasonable diligence requires an investor to reasonably recognize a financial development relating to his investment and requires that steps be taken to apprise one of these facts. If notice of an adverse claim was readily available through the observance of reasonable commercial practices, the purchaser is deemed to have constructive notice of that claim and, therefore, is not a bona fide purchaser.

The duty to act in good faith relates to the time of the purchase. As noted, Plesko purchased this stock in 1967, prior to the merger of Interstate and Automatic. Therefore, the pivotal question is did Plesko, at the time of purchase, act in a commercially reasonable manner? We conclude that he did because, at the time Plesko purchased the stock and took delivery, there were no irregularities in the transaction or suspicious circumstances. Plesko could not possibly have known

---

[6] Figgie cites *McMillan Ltd. v. Warrior Drilling & Eng'g Co., Inc.*, 512 So.2d 14 (Ala. 1987), to support his "dilution = adverse claim" argument. We find nothing in the case that even remotely supports its position because it concerns the matter of a violation of a transferor's option sale agreement with third parties.

in 1967 that three years later, an unknown third party would file an affidavit of lost certificates and request that Figgie reissue the stock to Kidder Peabody. Therefore, we reject Figgie's contention that Plesko did not act in a commercially reasonable manner.

### 4. Failure to Present Shares.

Finally, Figgie claims that to be entitled to the new shares, the bona fide purchaser must personally present the certificates for registration of transfer. Figgie claims that when Plesko gave the shares to his broker for presentation and sale, Plesko did not comply with § 408.405(3), STATS., because the broker was presenting the shares for registration in its name, not Plesko's name. Figgie also argues that Plesko actually sold the shares to his broker and was no longer the owner. We are not persuaded by Figgie's argument.

The trial court concluded that Plesko was a bona fide purchaser for value and, therefore, the owner of the Interstate stock certificates. As found by the trial court, the original certificates were registered in the name of Dean Witter but, while in Plesko's possession, were endorsed in blank. In 1988, Plesko presented the certificates to his broker, Paine Webber, for transfer and ultimate sale. The certificates were tendered by Paine Webber on Plesko's behalf. A review of the record, including Plesko's affirmative testimony that Paine Webber never paid him any money for the certificates, coupled with his statement of account, demonstrates the ineluctable inference that Plesko retained ownership of the certificates and that Paine Webber was merely his nominee for the purposes of registration and sale. Furthermore, we have found no authority interpreting § 408.405(3), STATS., that

783

requires Plesko himself to present the certificates for registration of transfer. We also note that Figgie fails to cite any authority for this proposition.

In sum, the trial court's finding that Plesko satisfied all the necessary requirements to qualify as a bona fide purchaser was not clearly erroneous.

### B. Statute of Limitations / Laches.

Figgie contends that Plesko's claim was barred by the statute of limitations and by the equitable doctrine of laches because: Plesko's claim either accrued at the time of the merger between Interstate and Automatic in 1967 or it accrued when the shares of Interstate were canceled on the corporate records in 1970; and, in either case, the claim is time-barred by the six-year statute of limitations, which ran in either 1973 or 1976. The trial court agreed that Plesko's conversion claim accrued in 1970 and applied the provisions of § 893.51, STATS., concluding that the conversion claim was time-barred by the six-year statute of limitations. That conclusion has not been questioned in this appeal.

The trial court also concluded that Plesko's pleadings included a claim for registration under § 408.405(3), STATS., which is not challenged by this appeal. What is contested, however, is when Plesko's cause of action under § 408.405(3) accrued.[7] The trial court concluded that Plesko's equitable cause of action

---

[7] Figgie asserts that the trial court resolved the time-bar issue by concluding that no statute of limitations applied to an action for registration. We conclude Figgie misreads the trial court's ruling. The trial court concluded "so I think the plaintiff is within the other six-year statute [893.93(1)(a)] by commencing this action in 1991."

784

for registration of transfer did not accrue until Plesko presented the stock in 1988; therefore, when Plesko sued in 1991, he was well within the six-year statute of limitations under § 893.93(1), STATS., which provides: "The following actions shall be commenced within 6 years after the cause of action accrues or be barred: (a) An action upon a liability created by statute when a different limitation is not prescribed by law." The trial court concluded that Figgie had a duty, pursuant to § 408.405(3),[8] to register Plesko's stock in January 1988, and when Figgie failed to comply with the statutory obligation, Plesko's cause of action accrued. We

[8] Section 408.405(3), STATS., reads as follows:

If, after the issue of a new certificated or uncertificated security, a bona fide purchaser of the original certificated security presents it for registration of transfer, the issuer shall register the transfer unless registration would result in over-issue, in which event the issuer's liability is governed by s. 408.104. In addition to any rights on the indemnity bond, the issuer may recover the new certificated security from the person to whom it was issued or any person taking under him or her except a bona fide purchaser or may cancel the uncertificated security unless a bona fide purchaser or any person taking under a bona fide purchaser is then the registered owner or registered pledgee thereof.

The trial court also concluded that the registration of the transfer of stock to Plesko would not result in an over-issuance of stock of Figgie. It based its conclusion on its findings of fact that Figgie was authorized to issue 18,000,000 shares of Class A common stock and 18,000,000 shares of Class B common stock, but in 1988 had only issued a combined amount of common stock equaling 18,566,823 shares. Based on these figures, we agree that issuing stock to Plesko would not result in over-issuance.

agree with the trial court and conclude that there was no error.[9]

A cause of action accrues when there exists a claim capable of present enforcement, a suable party against

---

[9] Figgie raises an additional argument that Plesko had notice that his claim was stale by virtue of § 408.305, STATS., which provides:

> An act or event that creates a right to immediate performance of the principal obligation represented by a certificated security or sets a date on or after which a certificated security to be presented or surrendered for redemption or exchange does not itself constitute any notice of adverse claims except in the case of a transfer:
> (1) After one year from any date for presentment or surrender for redemption or exchange; or
> (2) After 6 months from any date set for payment of money against presentation or surrender of the security if funds are available for payment on that date.

Figgie argues that by November 1967, Plesko knew his Interstate certificates were stale because he was on notice that those certificates should be exchanged for Automatic shares because, after the merger, Interstate would cease to exist. We disagree because, as found by the trial court, Plesko's purchase of the stock in 1967 before the merger would not trigger any right to exchange. The event creating any right Plesko had occurred after the purchase or transfer; not before. Additionally, the certificates were endorsed in blank when delivered to the Associated Bank which held the certificates on Plesko's behalf. Any notice would have been forwarded to the registered owner, Dean Witter. To support its argument, Figgie refers to *Oscar Gruss & Son v. First State Bank*, 582 F.2d 424 (7th Cir. 1978), *Morgan Guar. Trust Co. v. Third Nat'l Bank of Hampden Co.*, 400 F. Supp. 383 (D.Ma. 1975), *aff'd*, 529 F.2d 1141 (1st Cir. 1976), and *Phoenix Ins. Co. v. National Bank & Trust Co.*, 366 F. Supp. 340 (D.Pa. 1972), *aff'd*, 485 F.2d 681 (3d Cir. 1973), none of which do we deem applicable because they all involve holders who were deemed not to be bona fide purchasers, unlike our present fact determination.

whom it may be enforced, and a party who has the present right to enforce it. *Employers Ins. of Wausau v. Smith*, 154 Wis. 2d 199, 231, 453 N.W.2d 856, 869 (1990). Prior to the time that Plesko presented the Interstate stock for registration of transfer, he did not have a claim capable of present enforcement because Figgie had not yet refused to honor its statutory obligation under § 408.405(3), STATS. Until Figgie refused to register the transfer in violation of § 408.405(3), Plesko could not have pursued such a claim. Therefore, Plesko's cause of action for registration of transfer did not accrue until his broker presented the stock in 1988. Therefore, as noted above, when Plesko filed suit in 1991, he was well within the "catch-all," six-year statute of limitations.

As part of its time-barred contention, Figgie also asserts that the application of the doctrine of laches defeats Plesko's claim for registration of transfer. It argues that because of Plesko's protracted delay in presenting the certificates that he possessed, Figgie's defenses and affirmative rights were prejudiced.[10] Thus concludes Figgie, Plesko's claim presents a classic case to which the doctrine of laches applies. The trial court concluded, as a matter of law, that laches did not bar Plesko's equitable claim for registration of transfer. Whether a set of facts fulfills a particular legal standard is a question of law that this court reviews *de novo. Nottelson v. DILHR*, 94 Wis. 2d 106, 115-16, 287 N.W.2d 763, 768 (1980).

---

[10] Specifically, Figgie reiterates Plesko's knowledge of the impending merger between Interstate and Automatic and subsequent approval, negligently sitting on his rights for 24 years which passage of time precipitated the disappearance of any records that could reconstruct the intervening events.

For the doctrine of laches to apply, there must be: (1) an "[u]nreasonable delay in commencing the action; (2) knowledge of the course of events and acquiescence therein; and (3) prejudice to the party asserting the defense." *Paterson v. Paterson*, 73 Wis. 2d 150, 153, 242 N.W.2d 907, 909 (1976). The record indicates that the trial court found that Plesko had no reason to seek re-registration because he was a trader of securities. For some unexplained reason, the certificates found their way into Plesko's wife's safety deposit box where they remained for years until her death. When Plesko discovered their existence, he or his counsel diligently sought a determination of their status and value. These efforts included an inquiry to the Wisconsin Commissioner of Securities prior to initiating litigation.

Figgie's assertion that it lacked knowledge of Plesko's possible assertion of stock rights lacks persuasive quality for a very fundamental reason. When Dean Witter sought the issuance of new certificates and the cancellation of the original certificates, Figgie required it to submit an affidavit of lost certificates and an indemnity bond pursuant to § 408.405, STATS. This required procedure protected Figgie from a potential loss should a bona fide purchaser present, at a later time, the original certificates for transfer. Thus, Figgie was on notice of a potential claim and, at the same time, was provided indemnity in case of a subsequent attempt of stock transfer.

Figgie's claim of prejudice similarly lacks substance or merit for two reasons: (1) we know of no law nor regulation requiring a holder of a certificate endorsed in blank to register the stock in his or her or its name; (2) Figgie, or its designee transfer agent, was the only party in control of the document which defined

the interests of the potential liability. If the stock transfer documents which presumably included the affidavit and indemnity bond as required by § 408.405, STATS., were misplaced, no prejudice to Figgie can be attributed to the actions of Plesko.[11]

Based on the foregoing, we conclude there was an adequate basis in the record to affirm the trial court's conclusion that laches did not bar Plesko's claim for registration of transfer.

### C. Dismissal of Dean Witter.

Figgie also appeals from the judgment that dismisses its third-party claim against Dean Witter for indemnification. The trial court found that some "unknown third person" presented the affidavit and concluded that Dean Witter was entitled to dismissal of all claims against it. The trial court also found that the "conversion" occurred in 1970. As noted, findings of fact will not be reversed unless clearly erroneous, although we review the trial court's conclusions independently.

We affirm the dismissal on two bases. First, Figgie's claims against Dean Witter relate solely to the conversion claim. Figgie claims that Dean Witter submitted the affidavit of lost stock in 1970, which resulted in the canceling of the certificates at issue in this case. As noted, the trial court's finding that the conversion occurred in 1970 was not clearly erroneous. Moreover, the conversion statute of limitations governs and it provides that suit must be commenced within six years. *See* § 893.51(1), STATS. As the conversion

---

[11] We note also that Figgie, in spite of a potential remedy under § 408.406, STATS., against its transfer agent, dismissed its actions against them.

occurred in 1970, any timely claim based on conversion should have been filed by 1976. As a result of these time limitations, Figgie's claim against Dean Witter, which relates solely to the conversion claim, is barred by the statute of limitations.

Second, Figgie never produced the affidavit, presumably presented by Dean Witter, for cancellation and reissuance of the stock. Figgie never produced any documentation supporting this allegation. As a result, the trial court found only that "some unknown third party" presented an affidavit of lost certificates in 1970, causing the cancellation of the original stock certificates. Given Figgie's failure to adequately maintain such records and present such documentation, we cannot conclude that the trial court's finding in this regard was clearly erroneous. Accordingly, we affirm the dismissal of the third-party claim against Dean Witter.

## II. PLESKO'S CROSS-APPEAL.

Plesko appeals from that portion of the judgment that denies his claim for the payment of dividends on the stock declared and paid after he presented the stock in January 1988. The trial court concluded, as a matter of law, that Plesko "is not entitled to dividends paid by Figgie International on the certificates."

In its findings of fact, the trial court determined that: (1) Plesko presented the certificates to Paine Webber for transfer and ultimate sale; (2) on or about January 26, 1988, Paine Webber, on behalf of Plesko, submitted a letter of transfer to the First National Bank of Boston; (3) Plesko, through Paine Webber, tendered for exchange three certificates representing 300 shares of stock of Interstate Engineering Corp.; (4) the First National Bank of Boston was the transfer agent at that time for Figgie; (5) the First National Bank of

Boston refused to issue new certificates; (6) the letter of transmittal presented by Paine Webber did not identify Plesko as the owner; (7) Plesko's statement of account with Paine Webber indicated that the certificates were tendered on his behalf; and (8) Plesko never made a demand for the dividends until 1988. Our review of the record reveals that these findings of fact are not clearly erroneous.

A trial court's conclusions of law, however, are afforded independent review. *DOR v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd*, 447 U.S. 207 (1980). Lending support to the trial court's conclusion, Figgie, relying on § 408.207(1), STATS., posits that only a registered stock owner has a claim against the corporation for dividends.[12] To the extent that Plesko claims dividends prior to presentation for re-registration, Figgie is correct. Plesko, however, acknowledges he is not entitled to dividends prior to 1988. Thus, the only dispute is whether Plesko was entitled to dividends after he presented the stock in 1988.

Section 408.207(1), STATS., provides an issuer of stock the authority to treat the registered owner of a certificate as the person exclusively entitled to exercise the rights of an owner including the receipt of dividends. This protection afforded the corporate issuer by § 408.207(1), however, extends only until the security is presented for register of transfer. *See New England*

---

[12] Section 408.207(1), STATS., provides:

Prior to due presentment for registration of transfer of a certificated security in registered form, the issuer or indenture trustee may treat the registered owner as the person exclusively entitled to vote, to receive notifications, and otherwise to exercise all the rights and powers of an owner.

*Merchants Nat'l Bank v. Old Colony Trust Co.*, 417 N.E.2d 471 (Mass. Ct. App. 1981), *aff'd*, 429 N.E.2d 1143 (Mass. 1982); WILLIAM D. HAWKLAND, ET AL., UNIFORM COMMERCIAL CODE SERIES, 8-207.01, art. 8 (1986 & Supp. 1994).

Under § 408.405(3), STATS., after the issuance of a new certificated security, if a bona fide purchaser of the original certificate presents it for registration of transfer, the issuer, in this case Figgie, has the duty to register the transfer.

From the facts determined by the trial court, we can reasonably infer that Plesko was asserting his existence as a shareholder through his nominee, including all of the rights emanating from the status of a shareholder, not the least of which is entitlement to dividends. These historical facts and the inferred facts reasonably drawn therefrom lead us to the conclusion that the trial court erred as a matter of law in declaring that Plesko was not entitled to dividends paid by Figgie on the certificates after 1988 because, in fact, as found by the trial court, he did make a demand in 1988. If Figgie had honored the demand, Plesko would have been entitled to dividends. Therefore, we reverse that portion of the judgment that denies Plesko dividends from the time of presentation in 1988 to the present. We further instruct the trial court to enter an order consistent with our determination.

## CONCLUSION

In sum, Plesko qualified as a bona fide purchaser, his claim for registration was timely commenced, and Figgie's claim for indemnification against Dean Witter was barred by the six-year statute of limitations. Accordingly, we affirm in its entirety the judgment

that Figgie appeals; however, because Plesko would have been entitled to dividends if Figgie would have honored his registration of transfer, we reverse the judgment that Plesko cross-appeals. We hold that Plesko is entitled to dividends from the date of presentation to Figgie in 1988 until the present. Accordingly, we instruct the trial court to enter an order consistent with our determination.

*By the Court.*—Judgments affirmed in part and reversed in part.