# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 17, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP550**

Cir. Ct. No. **2019ME28**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE COMMITMENT OF A. D. S.:

SAUK COUNTY,

PETITIONER-RESPONDENT,

V.

A. D. S.,

RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed*.

¶1 FITZPATRICK, J.[1] A.D.S. appeals both an order for a civil recommitment and an involuntary administration of medication order entered by

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the Sauk County Circuit Court pursuant to WIS. STAT. ch. 51. I affirm the orders of the circuit court.[2]

¶2      A.D.S. was more than fifty years old when he was held on an emergency detention in 2019. At that time, a probable cause hearing was held before the same circuit judge whose orders are on appeal in this matter. A physician testified at that time that A.D.S. suffered from elaborate delusions. As some examples, A.D.S. held the belief that he was "an electric person" wired to a cell phone that monitors him "like a lie detector." Further, according to the physician, A.D.S. could not meet his basic needs. Among other things, A.D.S. was filthy and ran a risk of infections. The law enforcement officer who interacted with A.D.S. at the relevant time testified at that hearing that A.D.S. was intoxicated, homeless in the winter, and made statements not based in reality. Orders for a civil commitment of A.D.S. and for the involuntary administration of medication were granted in 2019.

¶3      In 2021, there was a request for a recommitment of A.D.S. brought pursuant to the petition of Sauk County. Dr. Taylor, a psychiatrist for approximately thirty years, testified as to her expert opinions regarding A.D.S., and I now summarize her pertinent testimony.

---

[2] A notice of appeal was filed in this matter on March 25, 2022, six months after the circuit court entered its orders on October 25, 2021. This court granted two requests for an extension to file A.D.S.'s brief-in-chief and, as a result, A.D.S. filed his brief-in-chief approximately ten weeks after that brief was initially due. The final brief in this appeal was filed on October 20, 2022, and this opinion is issued less than one month later. In addition, no party argues that this appeal is moot although the orders on appeal expired five days after the final brief was filed in this appeal.

¶4    A.D.S. suffers from schizophrenia. A.D.S. is aware that he has been diagnosed with that mental illness, but A.D.S. is unable to understand how his schizophrenia affects him. He is also unable to understand the necessity for medication and treatment of that illness. In other words, A.D.S. does not have insight into his mental illness.

¶5    A.D.S. reacts well to his medication, and the medication allows him to live in a group home. During their conversation, A.D.S. told Dr. Taylor that he does not believe his medication makes any difference for him. A.D.S. has told his "treatment team" and Dr. Taylor that, without a recommitment, he will stop taking his medication. As a result, Dr. Taylor testified it is likely that, without a recommitment order, A.D.S. will, in fact, stop taking his medication.

¶6    Without the medication, A.D.S.'s mental state will deteriorate, and he will become a proper subject for treatment due to his impaired judgment and inability to meet his basic needs for his own health and safety. If A.D.S. does not take his medication, he will have a recurrence of symptoms and behaviors resulting from his schizophrenia. Those behaviors include hearing voices and other symptoms of his illness that he had in the past which would become prominent again. According to Dr. Taylor, "[t]hat would lead him to decompensate and eventually he would end up in a hospital." Dr. Taylor also noted that A.D.S. has abused alcohol as a result of his mental illness. Summarizing, Dr. Taylor opined that, if A.D.S. does not take his medication as prescribed, he will become a danger to himself due to his impaired judgment.

¶7    Dr. Taylor discussed medications with A.D.S., but he was unable to apply an understanding of the advantages, disadvantages, and alternatives to

medication due to his mental illness. Also, A.D.S. was unable to understand that his medication is necessary and therapeutic in treating his illness.

¶8 Kayla Thomas worked with A.D.S. as a social worker and psychotherapist for about a year prior to the October 2021 hearing. Based on her experience working with A.D.S., Ms. Thomas testified that A.D.S. lacks insight into his mental illness and does not understand how his mental illness affects him. In her opinion, there is a high probability he will discontinue medication without a recommitment order and a medication order in place.

¶9 A.D.S. testified at the October 2021 hearing. On direct examination, A.D.S. stated that he is willing to continue to work with Ms. Thomas and take his medication. However, on cross-examination, A.D.S. testified that he does not believe he has a mental illness, does not need medication, and has discontinued his medication in the past when a commitment order has expired.

¶10 After the close of testimony and arguments of counsel at the October 2021 hearing, the circuit court made findings of fact which I now summarize. When A.D.S. does not take his medication, he is unable to care for himself. An example of this lack of care includes the incidents in the winter of 2019 when he was found outside and unable to care for himself. At that time, A.D.S. was "drinking too much and the alcohol was impairing his functioning as well." When A.D.S. takes his medication, he does not experience effects of schizophrenia to the extent that those effects render him dangerous to himself. The circuit court correctly noted the important factual issue in the case: What it "really comes down to, I think as it did last year, [is] whether the [c]ourt believes that [A.D.S.] will remain on his medications if not under a commitment." Even if A.D.S.

continues to work with Ms. Thomas, "that in and of itself doesn't guarantee that he'll actually take his medications."

¶11 The court found credible Dr. Taylor's testimony that A.D.S. told her that he would not continue to take his medication if he is not under a commitment order, and the court credited Dr. Taylor's opinion that A.D.S. will not continue on his medication if removed from the commitment order. The circuit court gave weight to Dr. Taylor's testimony that A.D.S. has a lack of insight into how schizophrenia affects his thinking, and that he cannot articulate in what way his schizophrenia impairs his judgment.[3] The circuit court found not credible A.D.S.'s testimony that he will continue to take the medication even if not ordered to do so.

¶12 The circuit court further determined that, if A.D.S. does not take his medication, "he would then be unable to satisfy his basic needs for nourishment, medical care, shelter, or safety such that there would be a substantial probability of death, serious physical injury, or serious physical debilitation that would ensue, particularly in the winter here in Wisconsin."

¶13 The circuit court entered an order for recommitment and entered an order for the involuntary administration of medication. A.D.S. appeals those orders of the circuit court.

¶14 "To prevail in a recommitment proceeding, the County must prove the same elements necessary for the initial commitment by clear and convincing

---

[3] The circuit court further noted that, in 2019 when A.D.S. was found in the cold and unable to care for himself, there was a guardianship in place, but that "was not sufficient … to protect [A.D.S.] from himself."

evidence—that the patient is (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." ***Langlade Cnty. v. D.J.W.***, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277 (citing WIS. STAT. § 51.20(1)(a), (13)(e)). A.D.S. does not dispute that the County proved the first two elements.

¶15 A portion of the circuit court order was based on WIS. STAT. § 51.20(1)(a)2.c. which states in pertinent part: "[A.D.S.] [e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."[4] In addition, there is an interplay of § 51.20(1)(am) with § 51.20(1)(a)2.c. Germane to this situation, our supreme court has stated:

> In a recommitment proceeding, however, there is an additional manner of proving dangerousness provided by WIS. STAT. § 51.20(1)(am). "Because an individual's behavior might change while receiving treatment, []§ 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings ...." [***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509]. Pursuant to § 51.20(1)(am),

> > If the individual has been the subject of inpatient treatment for mental illness … immediately prior to commencement of the proceedings as a result of … a commitment or protective placement ordered by a court under this section … the requirements of a recent overt act, attempt or threat to act under par. (a)2.a. or b., pattern of recent acts or omissions under par. (a)2.c. or e., or recent behavior under par. (a)2.d. may be satisfied by a showing that there is a

---

[4] The County does not contend on appeal that there is a substantial probability of injury to other individuals under that statutory subpart.

> substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.
>
> WISCONSIN STAT. § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19, 927 N.W.2d 509. "However, dangerousness remains an element to be proven to support both the initial commitment and any extension." *Id.*
>
> Indeed, "[t]he County must prove the individual '<u>is</u> dangerous.'" *Id.*, ¶24 (citing WIS. STAT. § 51.20(1)(a)2. and (13)(g)3.). It is not enough that the individual was at one point dangerous. Thus, "[e]ach extension hearing requires proof of <u>current</u> dangerousness." *Id.* The evidentiary pathway set forth by sub. (1)(am) "acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a.-e." but it "does not change the elements or quantum of proof required." *Id.*

*D.J.W.*, 391 Wis. 2d 231, ¶¶32-34. In addition, our supreme court has stated that, in a recommitment proceeding, the standard for dangerousness must be "viewed through the lens of § 51.20(1)(am)." *Id.*, ¶50.

¶16 Regarding this court's standard of review, our supreme court has held as follows:

> Whether the County has met its burden is a mixed question of law and fact. *Waukesha* [*Cnty.*] *v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. First, we will uphold a circuit court's findings of fact unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence. *Metro[politan] Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784.
>
> Second, we review whether the facts satisfy the statutory standard. *J.W.J.*, 375 Wis. 2d 542, ¶15, 895

7

> N.W.2d 783. In our review, we interpret and apply WIS. STAT. § 51.20. Statutory interpretation and application are questions of law that we review independently of the determinations rendered by the circuit court. *Metro[politan] Assocs.*, 379 Wis. 2d 141, ¶24, 905 N.W.2d 784.

*Id.*, ¶¶24-25.

¶17    A.D.S. appears to make three separate arguments on appeal, each of which I reject.[5]

¶18    A.D.S.'s first argument is that, regardless of the terms of WIS. STAT. § 51.20(1)(am) and the portions of *D.J.W.* quoted above, a recommitment order must be based on a finding that A.D.S. is currently dangerous. According to A.D.S., such a finding requires evidence of recent acts of A.D.S. evidencing dangerousness while he is taking his prescribed medication. From those premises, A.D.S. contends that the evidence presented at the recommitment hearing was insufficient. That contention misconstrues *D.J.W.* and misses the mark. Section 51.20(1)(am) and the above-quoted portions of *D.J.W.* make clear that recent acts or omissions are not necessary in these circumstances if it is determined that A.D.S. would be a danger to himself if treatment is withdrawn. There was sufficient evidence on that point.

¶19    Second, A.D.S. argues that it is "pure speculation" that A.D.S. will stop taking his medication if not ordered to do so. The record and the circuit court's findings of fact undermine that assertion. The circuit court made a finding

---

[5] There is no separate argument from A.D.S. specific to the medication order. Further, I reject the County's argument that A.D.S. did not sufficiently preserve his argument regarding sufficiency of the evidence. I agree with A.D.S. that, pursuant to WIS. STAT. § 809.30(2)(h), sufficiency of the evidence arguments may be raised for the first time on appeal.

of fact that A.D.S. will not continue taking his medication unless ordered to do so. Findings of fact are not set aside by an appellate court unless those findings are clearly erroneous. WIS. STAT. § 805.17(2). When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to the testimony. *Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994). It was up to the circuit court to determine the credibility of the witnesses, including A.D.S., regarding whether A.D.S. would continue to take his medication. There is more than enough in the record to sustain those credibility findings that are properly left to the circuit court.

¶20 Third, A.D.S. argues that looking back to, and considering, events in 2019 regarding A.D.S.'s actions and inactions at that time is reversible error. According to A.D.S., those events from two years before the October 2021 hearing do not support the assertions by the County advanced in the circuit court and on appeal regarding how A.D.S. will act if his medication is withdrawn. This argument fails.

¶21 In briefing in this court, A.D.S. concedes that the applicable statutes do not set any time limit regarding when such evidence becomes "stale" and, therefore, can no longer support a circuit court's determination. A.D.S.'s argument can also be rejected for two other reasons. The circuit court's consideration of events two years before the October 2021 hearing is not such ancient history that it should reasonably be ignored. That is certainly relevant evidence as it is the last time A.D.S. was off his medication and a clear indicator of the effect on him of not taking his prescribed medication. Next, even if the 2019 events are not considered, the County still prevails because the County is not required as part of its proof to delineate the precise course of decompensation of A.D.S. and the precise dangerous acts or omissions that will occur when A.D.S.

stops taking his medication. ***Winnebago Cnty. v. S.H.***, 2020 WI App 46, ¶13, 393 Wis. 2d 511, 947 N.W.2d 761.

¶22 For those reasons, the orders of the circuit court are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.